455 A.2d 678

**COMMONWEALTH of Pennsylvania**

v.

**William Charles LAMB, Appellant.**

Superior Court of Pennsylvania.

Submitted Sept. 23, 1981.

Filed Jan. 14, 1983.

418

Robert L. McQuaide, Gettysburg, for appellant.

Gary E. Hartman, District Attorney, Gettysburg, for Commonwealth, appellee.

Before BROSKY, McEWEN and BECK, JJ.

McEWEN, Judge:

We here consider an appeal from the judgment of sentence imposed after appellant was convicted by a jury of conspiracy to commit robbery and acquitted of the charge of robbery. We affirm.

Appellant was convicted on the basis of the testimony of Brenda Ramos, who implicated him as a co-participant with her and co-defendant, John Shenk, in an unsuccessful attempt to rob a diner in Gettysburg. Ramos, herself, was arrested shortly after the robbery attempt, subsequently

pleaded guilty to one count of robbery and testified on behalf of the Commonwealth at the consolidated trials of appellant and co-defendant John Shenk. A review of the testimony presented by the Commonwealth witnesses, Brenda Ramos and Corporal Hofe of the Gettysburg police, who arrested her shortly after the robbery, is helpful to our study of the issues presented by appellant.

Brenda Ramos testified that she was a friend of the appellant's co-defendant, John Shenk, and was, at the time of the robbery, living in the Shenk home in Gettysburg. On the evening of December 4, 1978, she accompanied Shenk to a mobile home in Gettysburg where appellant resided. After arriving at the mobile home, appellant, Shenk, appellant's roommate and she were drinking and engaged in a discussion of a proposal by Shenk that they commit a robbery. After the roommate of appellant retired to bed, Ramos testified that she, appellant and Shenk departed the mobile home and walked around the town of Gettysburg before proceeding toward the Lincoln Diner. Appellant and Shenk momentarily left her, approached the diner, looked in the windows to determine how many people were present and then rejoined Ms. Ramos. Ramos testified that, after a brief wait, Shenk handed her a gun and she crossed the street, went into the diner, pulled the gun out of her pocket, pointed it at a woman behind the counter and demanded money. When the woman called the police, Ramos left the diner, returned to the waiting Shenk and appellant and handed Shenk the gun before fleeing the area with appellant. She was thereafter apprehended by Corporal Hofe of the Gettysburg police, charged with two counts of robbery as well as a count of carrying a firearm without a license and pleaded guilty to one count of robbery.

Corporal Michael Hofe of the Gettysburg police, the only other witness presented at trial by the Commonwealth, testified that he arrived at the scene of the robbery and observed two persons, one of whom he believed was Brenda Ramos, and the other, a male Caucasian, running near the Lincoln Diner shortly after the robbery was attempted.

Corporal Hofe arrested Brenda Ramos within several blocks of the scene. While the male was not apprehended, Corporal Hofe testified that his height, hair color and length, and his physical characteristics were identical to those of appellant.

Appellant was charged some three months after the robbery at the diner and, following his conviction, was sentenced to a term of imprisonment of one to four years.

Appellant first contends that the Commonwealth failed at the Rule 1100 extension hearing to prove due diligence as required by Pa.R.Crim.P. 1100(c)(3) and that, therefore, the court erred when it granted the petition of the Commonwealth for an extension of time within which to commence trial. The prosecution of appellant was initiated when the complaint charging him with robbery and conspiracy was filed on March 14, 1979. The Rule 1100 rundate was September 10, 1979. The trial commenced on September 19, 1979, 189 days after the filing of the complaint. The Commonwealth filed a petition for an extension of time on June 15, 1979, well within the 180 day period, alleging that, despite due diligence, the Commonwealth would be unable to try the defendant within the prescribed period for the reason that the trial list for the June term was such that the case could not be scheduled. The petition of the Commonwealth requested that the time be extended through the commencement of the next criminal trial term on September 17, 1979. At the hearing held on the petition for an extension, both counsel for appellant and counsel for the co-defendant John Shenk joined in a stipulation with the District Attorney that all cases scheduled for trial during the May and June 1979 terms of criminal court had Rule 1100 rundates which would expire prior to the rundate in the instant case. Nevertheless, they requested that the Commonwealth present evidence at the hearing on the issue of due diligence. The Commonwealth presented no testimony at the hearing but represented to the court that it was ready to proceed to trial prior to the rundate and made reference to the judicial delay argument which had been

presented at other Rule 1100 extension hearings held the same day in other matters. The record of the extension hearing reflects the following exchange between the court and the Assistant District Attorney on this point:

The Court: Do you wish to produce any evidence as to the issue of due diligence, Mr. Hartman, or are you relying upon your prior argument?

Mr. Hartman: I am relying upon the prior argument that the term would indicate that the evidence would be that I would be prepared to go to trial at the time but there were no trial dates. Therefore, I'm arguing that the Commonwealth is prepared to go to trial but in the September term which is the basis for the motion.

The Court: The court will grant the request for its extension in each case. (N.T. 8/6/79, pp. 2, 3).

Following the expiration of the original September 10, 1979 rundate, appellant filed a written motion to dismiss the charges against him pursuant to Rule 1100(f) on the ground that the Commonwealth had failed to establish due diligence at the hearing on the petition to extend. The court denied the motion. Trial commenced the following day on September 19, 1979, the 189th day after the filing of the complaint, and the jury returned with verdicts of not guilty of the charge of robbery and guilty of the charge of conspiracy to commit robbery. Appellant preserved in post-verdict motions the Rule 1100 issue.

The trial court, on January 30, 1980, sua sponte, ordered that a supplementary evidentiary hearing be held to afford the Commonwealth the opportunity to present additional evidence of its due diligence in attempting to bring appellant to trial within 180 days after the filing of the complaint. At the supplemental evidentiary hearing, over the standing objection of defense counsel, the Commonwealth presented testimony indicating that it would have been possible for the District Attorney to try appellant by July 26, 1979 or any date thereafter but that, due to the court calendar and system of assigning trial dates in Adams

County, it was unable to assign a trial date to appellant within the 180 day period.

Appellant contends: (1) that the Commonwealth wholly failed to establish due diligence at the initial hearing on the petition to extend, in violation of Rule 1100(c)(3); (2) that it was error for the court to conduct, after the trial, the supplemental evidentiary hearing on the petition to extend because it allowed the Commonwealth to present evidence of its due diligence well after the expiration of the 180 day period and, thereby, amounted to a *nunc pro tunc* granting of an extension; and (3) that, for those reasons, the charges against appellant should be dismissed and he should be discharged in accordance with Pa.R.Crim.P. 1100(f).

Since we have concluded, on the basis of the record, that the Commonwealth met the requirements of Pa.R.Crim.P. 1100(c)(3) by establishing at the initial extension hearing that, despite due diligence, trial could not be commenced within the prescribed period, we need not address the contention of appellant that it was error for the court to order the supplemental evidentiary hearing on the petition to extend.[1] The Pennsylvania Supreme Court enumerated the requirements for an extension of time under Rule 1100(c) in *Commonwealth v. Mayfield,* 469 Pa. 214, 364 A.2d 1345 (1976):

> [T]he trial court may grant an extension under rule 1100(c) only upon a record showing: (1) the due diligence of the prosecution, and (2) the certification that the trial is scheduled for the earliest date consistent with the court's business; provided that if the delay is due to the court's inability to try the defendant within the prescribed period, the record must also show the cause of the court delay

---

**1.** It would appear that the action of a court in conducting, *after* trial, a supplemental evidentiary hearing on a Commonwealth petition to extend the time within which to commence trial, in the absence of an adequate initial record that satisfies the *Mayfield* requirements, would amount to an impermissible "second bite" of the Commonwealth's evidentiary burden at a Rule 1100 extension hearing. *See Commonwealth v. Akridge,* 492 Pa. 90, 422 A.2d 487 (1980); *Commonwealth v. Carr,* 292 Pa.Super. 137, 436 A.2d 1189 (1981); *Commonwealth v. Alston,* 286 Pa.Super. 290, 428 A.2d 997 (1981).

and reason why the delay cannot be avoided. *Id.*, 469 Pa. at 222, 364 A.2d at 1349–1350.

It is settled that judicial delay may serve as the basis for an extension of time under Rule 1100(c). *Commonwealth v. Morgan*, 484 Pa. 117, 398 A.2d 972 (1979); *Commonwealth v. Mayfield, supra; Commonwealth v. Shelton*, 469 Pa. 8, 364 A.2d 694 (1976); *Commonwealth v. Bytheway*, 290 Pa.Super. 148, 434 A.2d 173 (1981); *Commonwealth v. Eck*, 272 Pa.Super. 406, 416 A.2d 520 (1979). However, before such an extension under Rule 1100(c) may be granted, the record must show that the requirements of Rule 1100(c) as defined in *Mayfield* have been satisfied. *Commonwealth v. Mayfield, supra*, 469 Pa. at 222, 364 A.2d at 1349–50. The Commonwealth must meet this burden of proof by a preponderance of the evidence. *Commonwealth v. Ehredt*, 485 Pa. 191, 401 A.2d 358 (1979); *Commonwealth v. Mines*, 282 Pa.Super. 157, 422 A.2d 876 (1980). A mere allegation of due diligence by the Commonwealth in a petition to extend is not sufficient to support a court order extending the mandatory time for trial under Rule 1100(c). *See Commonwealth v. Mines, supra*, 282 Pa.Super. at 162, 422 A.2d at 879; *Commonwealth v. Antonuccio*, 257 Pa.Super. 535, 390 A.2d 1366 (1978). Such an application, however, is not defective per se for the Commonwealth may be granted an extension if it presents sufficient evidence of due diligence at the hearing on the application. *Commonwealth v. Mines, supra; Commonwealth v. Cimaszewski*, 261 Pa.Super. 39, 395 A.2d 931 (1978); *Commonwealth v. Myers*, 259 Pa.Super. 196, 393 A.2d 785 (1978).

We believe that the Commonwealth adequately met its burden of proving due diligence by: (1) filing the petition to extend the time within which to commence trial well within the 180 day period; (2) entering into the stipulation with counsel for appellant that each of the criminal cases that were tried in the May and June 1979 terms of criminal court, the last terms of criminal court before the term commencing September 17, 1979, had Rule 1100 rundates

which would have expired prior to the rundate in the instant case; and (3) representing to the court that the Commonwealth was able to go to trial prior to the expiration of the 180 day period but was unable to do so by reason of the unavailability of any criminal trial terms prior to the expiration of the rundate. The due diligence of the Commonwealth is implicit in the text of the stipulation which demonstrates that the instant case simply could not have been scheduled any earlier than the next available criminal trial to commence in September, without delaying other cases, all of which had earlier Rule 1100 rundates. We further believe that the nature of this stipulation, together with the action of the court in taking judicial notice of the criminal trial calendar in a one judge county, made sufficiently clear both the cause of the trial delay as well as the reason why the delay could not be avoided in a fashion as to satisfy the *Mayfield* test. *See Commonwealth v. Levitt*, 287 Pa.Super. 115, 429 A.2d 1126 (1981); *Commonwealth v. Crowley*, 281 Pa.Super. 26, 421 A.2d 1129 (1980); *See also Commonwealth v. Ryan*, 306 Pa.Super. 159, 170 n. 7, 452 A.2d 264, 269 n. 7 (1982). Therefore, we conclude that the hearing court properly granted an extension of time to the Commonwealth.

Appellant next contends that the trial court erred when it permitted Corporal Michael Hofe to testify for the Commonwealth even though his identity as an eyewitness was not disclosed to appellant prior to trial. *See* Pa.R. Crim.P. No. 305 B(2)(a). Hofe, a Gettysburg police officer, was called as a Commonwealth witness to offer testimony that he saw two people fleeing from the scene of the robbery, one of whom he identified as Brenda Ramos and the other of whom he described as a male whose physical characteristics were identical to those of appellant. Counsel for appellant objected to the presentation of the testimony of Officer Hofe due to the failure of the Commonwealth to disclose his name as an eyewitness after counsel for appellant requested disclosure of the names and addresses of all eyewitnesses pursuant to Pa.R.Crim.P. No. 305

B(2)(a). That Rule expressly provides for the discretionary discovery of eyewitnesses to a crime although it does not provide a definition of who constitutes an "eyewitness." In this case, Corporal Hofe was not, strictly speaking, an eyewitness to the robbery since he did not witness the incident actually take place. The value of his testimony to the Commonwealth was the link it provided between an individual who looked like appellant and Brenda Ramos, the perpetrator of the robbery, at a time and place proximate to the robbery. We could conclude that Corporal Hofe does not fall within the category of eyewitnesses whose names and addresses may be ordered to be given to the defense after a pre-trial motion for discovery has been filed pursuant to Pa.R.Crim.P. 305 B(2)(a). *See Commonwealth v. Wolfe,* 301 Pa.Super. 187, 447 A.2d 305 (1982). Assuming, on the other hand, that Corporal Hofe was such an eyewitness, it would appear that the Commonwealth did not satisfy the Rule.

Counsel for appellant filed a notice of intention to present an alibi defense on behalf of appellant approximately one month prior to the commencement of trial. Prior to that time counsel for appellant and co-defendant Shenk had each informally requested pre-trial discovery of the names and addresses of all eyewitnesses pursuant to Pa.R.Crim.P. 305 B(2)(a). The district attorney responded to that informal request to identify eyewitnesses but did not include in the response the name of Corporal Hofe. When the Commonwealth called Corporal Hofe to the stand, both counsel for appellant and co-defendant Shenk moved to preclude his testimony pursuant to the sanctions provided in Pa.R. Crim.P. 305 E. The court then undertook an inquiry into the application that had been made by appellant to secure information concerning the witnesses. The District Attorney advised the court that, at the time he received the requests for disclosure of eyewitnesses, he did not have all the information which later became available to him and, for that reason, directed counsel to a Sergeant Potter of the Gettysburg police force for further information. The

record reveals that counsel for appellant was subsequently informed by Sergeant Potter that one of his officers "did see someone that he thought might have been Brenda Ramos with someone that he thought was a white male." (N.T. P. 71). The trial court, noting that the testimony of Hofe "could well have been crucial" and "certainly would have bolstered Ms. Ramos by lending corroboration to her statement that she and Lamb fled the crime scene together", offered to grant counsel for appellant and co-defendant Shenk a half day continuance for the purpose of investigating the credibility of the officer. Both declined to take advantage of this opportunity.

■ In *Commonwealth v. Parente*, 294 Pa.Super. 446, 450–52, 440 A.2d 549, 552 (1982), we said that "[u]nder section E of Pa.R.Crim.P. 305, when it becomes apparent that a party has failed to comply with the provisions of the rule, the trial court has broad discretion in choosing an appropriate remedy." *See Commonwealth v. Keeler*, 302 Pa.Super. 324, 448 A.2d 1064 (1982). A court may order an offending party to permit discovery or inspection, or it may grant a continuance, or it may prohibit the offending party from introducing the testimony of the undisclosed witness, or it may enter such other order as it deems just under the circumstances. Pa.R.Crim.P. 305 E; *see Commonwealth v. Keeler, supra.*

■ We cannot say that the trial court committed an abuse of discretion by granting appellant the right to a continuance to enable an investigation into the credibility of Corporal Hofe, since the grant of a continuance as a remedy for non-disclosure of eyewitnesses is specifically approved in Pa.R.Crim.P. 305 E. We believe the remedy proposed by the court was appropriate in this case where counsel for appellant had been informed that there was a police officer who saw Brenda Ramos and a male running together after the robbery, but yet failed to subsequently seek, through a formal motion for pre-trial discovery, the name of the police officer and the text of his statement. *See* Pa.R.Crim.P. 305

A. We conclude that appellant cannot now claim prejudice where he has waived the opportunity offered by the court to dispel any harm to him by virtue of the previously undisclosed testimony of Corporal Hofe.

Appellant proceeds to contend that the trial court erred in permitting Brenda Ramos to refer, while testifying as a Commonwealth witness, to a statement she had made after the conclusion of the conspiracy. Appellant appears to make two arguments: first, he alleges that the Commonwealth failed to meet the three requirement test of *Commonwealth v. Proctor*, 253 Pa.Super. 369, 385 A.2d 383 (1978), which describes the foundation which must precede any reference by a witness to a writing in order to refresh recollection; second, appellant claims that the reference by the prosecutor and the witness to the statement permitted the jury to know of its existence even though it was not admitted into evidence, thereby violating the general rule in conspiracy cases that the out-of-court declarations of one co-conspirator are not admissible against another co-conspirator unless the declarations were made during the conspiracy and in furtherance of the common design. *See Commonwealth v. Coccioletti*, 493 Pa. 103, 425 A.2d 387 (1981). We find these arguments to be without merit.

It is well established that a writing or other object may properly be used by a witness to refresh or revive his or her present recollection of past events. *Commonwealth v. Payne*, 455 Pa. 503, 317 A.2d 208 (1974); *Commonwealth v. Canales*, 454 Pa. 422, 311 A.2d 572 (1973); *Commonwealth v. Proctor, supra.* " 'The proper procedure for a party to refresh his own witness' recollection is to show the writing, or other evidence, to his witness and after the witness' recollection is refreshed, to proceed with *direct examination* and have the witness testify from present recollection.' " *Commonwealth v. Payne, supra* 455 Pa. at 506, 317 A.2d at 210; *Commonwealth v. Proctor, supra* 253 Pa.Super. at 373, 385 A.2d at 385. We adopted in *Proctor,*

the three part test pronounced by the Supreme Court of Michigan in *Moncrief v. City of Detroit,* 398 Mich. 181, 247 N.W.2d 783 (1976), and decreed that the recollection of a witness may be refreshed by a party provided that three conditions precedent have been met:

> " 'To permit the use of a writing in order to refresh the memory of a witness, the proponent must show: (1) that the witness' present memory is inadequate; (2) that the writing could refresh the witness' present memory; and (3) that reference to the writing actually does refresh the witness' present memory.' " *Commonwealth v. Proctor, supra* 253 Pa.Super. at 373, 385 A.2d at 385.

We are satisfied that the Commonwealth provided the foundation required by *Proctor.* Since the statement was not admitted into evidence but was, instead, used only to refresh the recollection of the witness concerning the events on the night of the robbery, the general rule concerning the admissibility of declarations of co-conspirators simply does not apply. A review of the testimony of Ms. Ramos discloses that her present memory of the events on the night of the robbery had been inadequate; that the writing could refresh her present memory as to some of the events of that evening; and that it did in fact refresh her present memory of some of those events. We find no error with the decision of the trial court to allow Brenda Ramos to refresh her recollection with the statement she had given to a police officer following her arrest.

Appellant finally contends that the testimony of Commonwealth witness Brenda Ramos was not sufficient evidence of appellant's participation in a conspiracy to commit robbery to sustain his conviction of that charge. He argues that the failure of Ramos to specifically relate any oral agreement among the three to commit the robbery, as well as her inability to relate anything that appellant did to aid or solicit the robbery, is simply inadequate to show that he conspired with Ramos and co-defendant Shenk to commit the robbery. We disagree.

■■■■ The essence of the offense of conspiracy is an agreement between two or more persons to commit an unlawful act. *Commonwealth v. Emmi*, 290 Pa.Super. 86, 434 A.2d 142 (1981). The agreement required for conspiracy can seldom be directly proved, nor need it be. *Commonwealth v. Smith*, 289 Pa.Super. 356, 433 A.2d 489 (1981); *Commonwealth v. Stephens*, 231 Pa.Super. 481, 331 A.2d 719 (1974). However, a mere association between several alleged co-conspirators or their mere presence at the scene of the crime is not enough to establish that there has been a criminal conspiracy. *Commonwealth v. Emmi*, *supra*. Among the circumstances which are relevant, but not sufficient by themselves, to prove a corrupt confederation are: (1) an association between alleged conspirators; (2) knowledge of the commission of the crime; (3) presence at the scene of the crime; and (4) in some situations, participation in the object of the conspiracy. The presence of such circumstances may furnish a web of evidence linking an accused to an alleged conspiracy beyond a reasonable doubt when viewed in conjunction with each other and in the context in which they occurred. *Commonwealth v. Carter*, 272 Pa.Super. 411, 416 A.2d 523 (1979).

■■■ We believe that the Commonwealth adequately established the existence of the conspiracy between Brenda Ramos, appellant and co-defendant Shenk to commit the robbery of the Lincoln Diner by way of the testimony of Brenda Ramos. It is clear that the uncorroborated testimony of a co-conspirator, if believed, is sufficient to support a conviction in a criminal conspiracy prosecution. *Commonwealth v. Tumminello*, 292 Pa.Super. 381, 437 A.2d 435 (1981); *Commonwealth v. Richbourg*, 263 Pa.Super. 494, 398 A.2d 685 (1979). We have carefully studied the record and earlier summarized the evidence of the Commonwealth. We conclude the evidence was certainly sufficient to sustain a conviction of conspiracy to commit robbery.

Judgment of sentence affirmed.