606 A.2d 939

## COMMONWEALTH of Pennsylvania

v.

## Sean L. SMITH, Appellant.

Superior Court of Pennsylvania.

Submitted Jan. 22, 1991.

Filed April 24, 1992.

210

Floyd P. Jones, York, for appellant.

William H. Graff, Jr., Asst. Dist. Atty., York, for Com., appellee.

Before OLSZEWSKI, BECK and TAMILIA, JJ.

OLSZEWSKI, Judge:

This is an appeal from a judgment of sentence imposed after Sean Smith was convicted of criminal conspiracy to deliver controlled substances. The jury acquitted Smith of the charges of possession of a controlled substance with intent to deliver and delivery of controlled substances. Timely post-verdict motions were filed and denied, and Smith was sentenced to a three-to-six-year term of imprisonment. This timely appeal followed.

On appeal, Smith raises six issues for our consideration. First, Smith contends that the trial court erred in failing to suppress evidence seized at his apartment. Second, he contends that the trial court erred in denying him access to the psychiatric records of a witness who testified against him. Third, Smith alleges error for the trial court's refusal to allow defense counsel to cross-examine that witness as to his history of psychiatric treatment. Fourth and fifth, Smith presents two allegations of error as to hearsay testimony which occurred at trial: first, that a mistrial should have been granted; second, that the curative instruction highlighted the hearsay testimony. Smith's final assertion of error is the trial court's failure to grant his motion for a directed verdict on the conspiracy charge. Finding merit to none of Smith's contentions of error at his trial, we affirm the judgment of sentence.

The relevant facts of this case may be summarized as follows. A confidential police informant purchased cocaine from Michael March. Following his apprehension, March told police he had purchased the drugs from Smith at Smith's apartment using the $4,100 which March had received from the informant, who in turn had received it from the police.

Trooper Voggenreiter proceeded to Smith's apartment while Trooper Kessler obtained a search warrant for the premises. At Smith's apartment, Voggenreiter observed a marijuana pipe in plain view on a table through an open

doorway to the hall. In response to Voggenreiter's knock at the doorway, Smith came through another doorway, which was covered by a blanket, and then fled back to the separate room when Voggenreiter identified himself. The police secured the premises and arrested Smith. The premises were searched when Kessler arrived with a warrant. This search produced 1.1 grams of cocaine, two drug record books, mail addressed to Smith, Smith's wallet, and $11,450 from above the ceiling tiles. Among the money was the $4,100 in marked bills used by March to purchase the cocaine earlier that evening.

■ As to appellant's first allegation of error, we find no basis for suppression of the evidence seized because the premises were searched only after the presentation of a search warrant. (Suppression transcript [S.T.] of May 22, 1989, at 19.) Appellant's related allegation of error therefore fails.

■ Appellant's second allegation of error is controlled by a recent *en banc* decision by this Court. *Commonwealth v. Kennedy,* 413 Pa.Super. 95, 604 A.2d 1036 (1992). Smith attacks the trial court's refusal to allow him access to the psychiatric records of March, for the purpose of impeachment, and cites *Commonwealth v. Lloyd,* 523 Pa. 427, 567 A.2d 1357 (1989), in support of his argument. Appellant argues that *Lloyd* entitles him to examine the privileged records of the witness, March. However, March's records were not in the possession of the Commonwealth; they were held at the facility where he was treated. No error lies in denying Smith access to these records, because they are absolutely privileged and shielded from discovery, absent the consent of the patient.[1] At the time *Lloyd* was

1. "No psychiatrist or person who has been licensed under the act of March 23, 1972 (P.L. 136, No. 52) to practice psychology shall be, without the written consent of his client, examined in any civil or criminal matter as to any information acquired in the course of his professional services in behalf of such client. The confidential relations and communications between a psychologist or psychiatrist and his client shall be on the same basis as those provided or prescribed

decided, the statutory protection now afforded to psycho-therapeutic records was not in effect. Therefore, the *Lloyd* Court was not required to analyze whether the defendant's right to these records was subject to any restriction. In the interim, psychotherapeutic records have been afforded a privilege; this statutory protection directs our disposition of this issue.

Accordingly, in *Kennedy*, we held that where psychother-apeutic records are not in the prosecution's possession, and are subject to the protection of a statutorily enacted abso-lute privilege, a defendant's rights of confrontation and compulsory process are not violated by a denial of access to those records. In accordance with our disposition of this issue in *Kennedy*, we find no basis upon which to afford appellant relief pursuant to his second allegation of error. March's psychiatric records are statutorily protected and are not subject to discovery.

■ Appellant's third contention of error is that it was error to prohibit him from cross-examining March about his psychiatric treatment for impeachment purposes. The Com-monwealth argues that Smith conceded that March was competent to testify and, therefore, cannot use March's psychiatric treatment as a basis for impeachment. We agree, finding that Smith waived any objection he may have harbored regarding March's testimony.

At appellant's suppression hearing, the court asked de-fense counsel whether he was requesting a hearing to determine March's competency to testify. Defense counsel stated he was not. (*See* S.T. at 8–9.) Upon conclusion of the suppression hearing, the court ruled on the Common-wealth's motion *in limine*, which requested that cross-examination on March's psychiatric treatment be barred.[2]

by law between an attorney and client." 42 Pa.C.S. § 5944, amended December 22, 1989.

2. The Commonwealth's motion *in limine* also requested relief on the basis that March's counsel for his mental health hearing divulged to appellant Smith's trial counsel March's psychiatric patient status. (Both attorneys were employed by the York County Public Defender's

214

The court granted the Commonwealth's motion, for the reason that "there has been no showing or no attempted showing that the Commonwealth witness is incompetent to testify." (S.T. at 37–38.) The court then stated that any testimony or inquiry into March's competency was irrelevant. (S.T. at 38.) No objection was raised at that time by defense counsel.

More importantly, no objection was raised at trial. March testified and was cross-examined by appellant's counsel with no reference or objection to March's competency. Appellant's arguments notwithstanding, "this Court may not raise issues sua sponte which were not properly preserved in the trial court." *Commonwealth v. Willis*, 380 Pa.Super. 555, 580, 552 A.2d 682, 694 (1988). To preserve an issue for review, a party must make a timely and specific objection at trial, and "Superior Court will not consider a claim on appeal which was not called to the trial court's attention at a time when any error committed could have been corrected." *Noecker v. Johns–Manville Corp.*, 355 Pa.Super. 463, 471, 513 A.2d 1014, 1018 (1986); *DiSalle v. P.G. Publishing Co.*, 375 Pa.Super. 510, 544 A.2d 1345 (1988); 42 Pa.C.S. § 227(1)(b); *see also Commonwealth v. Bullock*, 359 Pa.Super. 150, 518 A.2d 824 (1986) (holding that failure to object to an offer of evidence at the time the offer is made, assigning grounds for objection, is waiver upon appeal of any ground of complaint against admission). Our Supreme Court has explicitly stated that to preserve an issue for appellate review, an appellant must make a timely objection at the appropriate stage of the proceedings before the trial court, and must specifically raise the issue in post-trial motions.[3] *Reilly by Reilly v. Southeastern Pennsyl-*

office.) The petition alleges that this exchange was in violation of the Pa.Rules of Ethical Conduct and that defendant should be precluded from utilizing this wrongfully volunteered information.

3. Although the fact that post-verdict motions were filed by appellant in this case is indicated by the briefs presently before the Court, the content of those motions is not before the Court in this case. Despite efforts to locate post-verdict briefs, the Court was informed on Sep-

*vania Transportation Authority,* 507 Pa. 204, 214, 489 A.2d 1291, 1296 (1985). Appellant has failed to preserve his objection to March's competency. We are therefore precluded from examining the substance of this allegation of error.

Even assuming in this case that we held appellant did not waive the issue of cross-examination on competency, we would decline to reverse the trial court's finding that March was competent to testify. This Court was held that "because a trial judge has a superior opportunity to assess the competency of a witness, an appellate court should virtually never reverse a competency ruling." *Commonwealth v. Anderson,* 381 Pa.Super. 1, 6, 552 A.2d 1064, 1067 (1988); *Commonwealth v. Davis,* 394 Pa.Super. 591, 596, 576 A.2d 1005, 1008 (1990). Therefore, the determination of a witness's competency to testify will not be disturbed on appeal unless there exists a clear abuse of discretion. *Id.* A "trial court need not order an investigation of a witness's competency, unless he or she has some doubt of such after having observed the witness." *Commonwealth v. Fulton,* 318 Pa.Super. 470, 484, 465 A.2d 650, 657 (1983). The trial judge in this case observed no evidence of incompetency and ruled March fit to testify. We would not reverse this finding.

As to the fourth and fifth allegations of error, we recognize that Trooper Voggenreiter's testimony did contain hearsay statements. (Trial transcript [T.T.] of May 22, 1989, at 54.) However, the mention of appellant's name by a co-offender, as testified by Trooper Voggenreiter, was harmless. Immediately thereafter the court gave a comprehensive curative instruction. (T.T. at 55.) Defendant now alleges that the instruction highlighted the hearsay and is thus grounds for a mistrial. We disagree.

The suggestion that the jury convicted appellant based upon this passing reference is without merit. The Common-

tember 25, 1991 by the Harrisburg Prothonotary's Office that the post-verdict motions were disposed of orally and that no briefs were filed.

wealth presented abundant other evidence, including testimony by Michael March that he obtained drugs from appellant. We have held that error is harmless when the prejudice accruing to appellant is minimal compared to the Commonwealth's overwhelming evidence of guilt. *Commonwealth v. Westcott*, 362 Pa.Super. 176, 523 A.2d 1140 (1987). Such is the case here; no error resulted from the curative instruction and the allegation that a mistrial was warranted is without merit.

On appellant's sixth allegation of error, we find that the trial court properly denied the motion for a directed verdict on the conspiracy charge. Appellant alleges error because the jury found him guilty of conspiracy while finding him not guilty of delivery and possession. This apparent inconsistency is not grounds for relief. We have held that the agreement necessary for conspiracy may be inferred from a variety of circumstances, including: the relationship between the parties; circumstances surrounding the crime; and, knowledge of and participation in the crime. These factors may assemble to establish conspiracy beyond a reasonable doubt, even where one factor alone might fail. *Commonwealth v. French*, 396 Pa.Super. 436, 578 A.2d 1292 (1990).

In Smith's case, evidence was presented that co-offender March phoned appellant and ordered cocaine. (T.T. at 24.) March purchased the cocaine from appellant (T.T. at 27), and upon his arrest, March divulged his source—appellant. (T.T. at 30.) Evidence was presented that appellant harbored a large amount of cash, drug records, and packaging material at his residence. The jury found these factors sufficient to prove the drug-selling operation, and found appellant guilty of conspiracy, even though it acquitted him of delivery and possession. As we held in *French*, this is a proper determination, and appellant's allegation of error must fail.

Because we find merit to none of appellant's assertions of error, we affirm the judgment of sentence.

BECK, J., files a dissenting opinion.

BECK, Judge, dissenting.

Although I agree with the majority's resolution of appellant's first five claims of error, I conclude that appellant should prevail on his final claim that the evidence of conspiracy was insufficient to convict. I limit my discussion to the sufficiency of the evidence.

Appellant Sean Smith was charged with possession of a controlled substance with intent to deliver, delivery of controlled substances, and conspiracy to commit possession with intent to deliver controlled substances. Following a jury trial, Smith was acquitted of the first two charges but found guilty of criminal conspiracy.[1]

"The test to be utilized in determining if a directed verdict should be granted is 'if the prosecution's evidence, and all inferences arising therefrom, considered in the light most favorable to the prosecution are insufficient to prove beyond a reasonable doubt that the accused is guilty of the [crime] charged.'" *Commonwealth v. Potts*, 314 Pa.Super. 256, 278, 460 A.2d 1127, 1138 (1983) (citations omitted).

Viewing the evidence in accordance with the above standard, the following evidence was adduced at trial. On June 20, 1988, confidential informant Richard Siegel agreed to participate in a "sting" operation wherein he would purchase a quantity of cocaine with $4,100.00 in "marked" money. That same day, Russell Wilson was asked and agreed to secure cocaine for Siegel. Wilson then approached Michael March, who communicated with appellant Smith, his "supplier."[2] After March had confirmed that appellant Smith could supply the cocaine, Siegel, Wilson and March drove to a street near an art school. During the ride, Siegel handed $4,100.00 to March.

At the art school, the vehicle stopped and March alone exited the vehicle. Forty-five minutes later, he returned with two and one-half ounces of cocaine. Thereafter, the

---

1. 18 Pa.C.S.A. § 903(a).

2. The criminal indictment refers to a conspiracy among Wilson, March and appellant Smith.

vehicle was stopped and the occupants arrested. After his arrest, March told the police that he left the vehicle to go to Smith's apartment and therein gave Smith $4,100.00 in exchange for two and one-half ounces of cocaine. March also told the police where Smith lived. Pursuant to this information, the police proceeded to Smith's apartment. Because the apartment door was open, the police officers were able to observe drug paraphernalia on the kitchen table. When the officers entered the apartment, they located Smith and arrested him. Later, another officer arrived with a search warrant, and a search pursuant thereto revealed packages of cocaine, various empty "baggies", records of drug transactions, and a large amount of cash. Among the evidence seized was marked bills totaling $4,100.00

In addressing Smith's claim, we initially refer to the definition of criminal conspiracy, as set forth in the Crimes Code:

> (a) Definition of conspiracy,—A person is guilty of conspiracy with another person or persons to commit a crime if with the intent of promoting or facilitating its commission he:
>
> (1) agrees with such other person or persons that they or one or more of them will engage in conduct which constitutes such crime or an attempt or solicitation to commit such crime;

18 Pa.C.S.A. § 903(a)(1). *See also Commonwealth v. Mills*, 329 Pa.Super. 196, 478 A.2d 30 (1984); *Commonwealth v. Lamb*, 309 Pa.Super. 415, 455 A.2d 678 (1983). In *Lamb*, this court said:

> The essence of the offense of conspiracy is an agreement between two or more persons to commit an unlawful act. The agreement required for conspiracy can seldom be directly proved, nor need it be. However, a mere association between several alleged co-conspirators or their mere presence at the scene of the crime is not enough to establish that there has been a criminal conspiracy. Among the circumstances which are relevant, but not

sufficient by themselves, to prove a corrupt confederation are: (1) an association between alleged conspirators; (2) knowledge of the commission of the crime; (3) presence at the scene of the crime; and (4) in some situations, participation in the object of the conspiracy. The presence of such circumstances may furnish a web of evidence linking an accused to an alleged conspiracy beyond a reasonable doubt when viewed in conjunction with each other and in the context in which they occurred.

*Commonwealth v. Lamb, supra,* 309 Pa.Superior Ct. at 429, 455 A.2d at 685–86 (citations omitted).

*Commonwealth v. Derr,* 501 Pa. 446, 462 A.2d 208 (1983) is similar to the instant case. In *Derr,* an undercover agent gave $1,100.00 to appellant to purchase contraband. The undercover agent remained in the car while appellant entered the premises to purchase the hashish. Shortly after entering the house, appellant returned with the hashish and delivered it to the undercover agent. Thereafter, the appellant and the undercover agent parted.

The *Derr* court found the Commonwealth failed to prove "an agreement between two or more persons to engage in some unlawful activity." In *Derr* the Pennsylvania Supreme Court found that the Commonwealth did not show that the "defendant had any knowledge of the existence or terms of the alleged agreement and participated in no action toward the furtherance of the alleged agreement." In essence all the Commonwealth showed was a buyer-seller relationship between appellant and his supplier.

In the instant case as in *Derr* the Commonwealth failed to prove a conspiracy beyond a reasonable doubt. Neither direct nor circumstantial evidence proved that appellant Smith had any knowledge of the existence or terms of an agreement among Wilson, March, and himself as supplier. The conspiracy must be premised upon an agreement between the conspirators to deliver a controlled substance to the customer, in this case informant Siegel. The Commonwealth's evidence therefore is insufficient.

The Commonwealth's evidence indicates the following: that March as the direct purchaser accompanied Siegel and Wilson to an art school, that March alone went to Smith's apartment to purchase cocaine for Siegel, and that March and Wilson knew that Siegel sought to obtain cocaine. However, the evidence does not support the conclusion that Smith, the supplier, made an agreement with March and Wilson to sell cocaine to Siegel. There is no evidence that would indicate that Smith had harbored joint criminal intent to sell cocaine to Siegel. Furthermore, there is no evidence that Smith knew Siegel or had any prior dealings with him. The evidence merely proves a buyer-seller relationship between March and Smith.

The majority attempts to impute knowledge of an agreement by relying on evidence that appellant had a large amount of cash, drug records, and packaging material in his apartment. To conclude from that the appellant conspired with March and Wilson is speculative and does not constitute evidence of a conspiracy beyond a reasonable doubt. The *Derr* court under similar circumstances instructs that we may not impute an agreement where the evidence only supports the fact that the supplier sold drugs to the customer. The Commonwealth's evidence falls far short of the reasonable doubt standard necessary to convict.