STEINBERG, J.,
On October 16, 2014, after a trial without jury, the appellant, Jerome Lagreca, was found guilty of harassment.[1] He was sentenced the same date to pay the costs of prosecution and pay a fine in the sum of one hundred ($100) dollars. The testimony at the non-jury trial revealed that the appellant contacted ManorCare, a nursing home/rehabilitation facility where his parents were receiving care, and threatened a nurse’s aide who spoke with him.
A notice of appeal was filed on November 14, 2014. Pursuant to this court’s Pa.R.A.P. 1925(b) directive, counsel filed a timely “concise statement of matters complained on appeal” (hereinafter concise statement) on December 24, 2014. It is alleged that the evidence was “insufficient to support the verdict and/or the verdict was against the weight of the evidence” to support the *358 harassment verdict.[2] It is also alleged that it was error to permit Jenayra Quinones, the nurse’s aide, to refresh her recollection with the written statement she provided to Officer Keith Fryslin of the Bethlehem Police Department.[3]
Background
On April 19, 2014, Jenayra Quinones was working as a nurse’s aide at HCR ManorCare on Westgate Drive in Bethlehem. She was working the 7:00 a.m. to 3:00 p.m. shift, and shortly after lunchtime she was collecting trays. While doing so, she went to check on Mary Lagreca, the appellant’s mother, because the “light” to her room was illuminated,[4] which indicated a request for assistance. When Ms. Quinones entered the room, which was occupied by both of appellant’s parents, Mrs. Lagreca asked her to speak with the appellant who was on the phone.
Mrs. Lagreca told Ms. Quinones that her son was upset, and wanted to speak to someone about his parents’ care. When Ms. Quinones answered the phone, the appellant identified himself, and went into a thirty (30) to forty-five (45) minute tirade about his parents’ care and highlighted his displeasure with their care by using expletives.[5] He also angrily explained that if the staff did not do their job correctly that “he would come in there and raise hell and show us how to do our job physically...he would physically push us in the room and show us how to do our care.”[6] In a further effort to emphasize whatever point *359 he was trying to make about his intentions, the appellant, at least three times, mentioned a shooting in Allentown.[7] Ms. Quinones explained that the defendant was speaking about “violent stuff,” and also stated that he would come to the facility and “raise hell.”[8] The appellant’s rant took a more serious turn when he mentioned “shooting up [or] in the place.”[9] He also spoke about harming someone in the facility with a “gun.”[10] The appellant’s latter comments upset Ms. Quinones, and she reported it to her supervisor and later to Officer Fryslin.
Officer Fryslin responded to the ManorCare that afternoon and spoke with the floor supervisor, Ms. Shea. He then spoke with Ms. Quinones, and asked her to provide a written statement about the appellant’s alarming statements. Later that afternoon, the appellant responded to the Bethlehem Police Department at Officer Fryslin’s request. The appellant acknowledged making the phone call, but initially said he was speaking to his mother, and Ms. Quinones may have overheard his conversation. When Officer Fryslin told him that his mother confirmed that she handed the phone to Ms. Quinones, he admitted that he spoke to Ms. Quinones about his parents’ treatment.[11] He denied making threats, and provided a somewhat lame explanation about the shooting in Allentown. Specifically, that people get shot over money, but that “he’s not that type of person.”[12]
*360 The appellant, who was 53 at the time of trial, resided with his parents until their admission to ManorCare. Both parents, who were in their eighties, were admitted to that facility in April, 2014 for rehabilitation services. The appellant was not satisfied with the quality of their care.[13]
The appellant testified that on April 19, 2014, he attempted to call his parents, but initially was unsuccessful. He then attempted to reach the front office on three occasions to check on his parents’ welfare. He testified that he eventually spoke to his mother and Ms. Quinones, but provided a completely different version of their conversation.[14] He denied ever threatening to shoot-up or bring a gun to ManorCare.[15] He also estimated the entire conversation as lasting no more than “three, four minutes.”[16]
Discussion
A. Sufficiency and Weight of the Evidence
Challenges to the sufficiency and the weight of the evidence are distinct legal concepts. Commonwealth v. Davis, 799 A.2d 860, 864 (Pa. Super. 2002). A claim challenging the sufficiency of the evidence requires all the evidence admitted at trial to be viewed in the light most favorable to the verdict winner, who is also entitled to all reasonable inferences in its favor. Commonwealth v. Burkett, 830 A.2d 1034, 1037 (Pa. Super. 2003). In doing so, there must be “sufficient evidence to enable *361 the fact-finder to find every element of the crime beyond a reasonable doubt.” Commonwealth v. Palo, 24 A.3d 1050, 1054 (Pa. Super. 2011) quoting Commonwealth v. Bruce, 916 A.2d 657, 661 (Pa. Super. 2007). However, the application of this test does not permit the evidence to be weighed nor is the judgment of the fact-finder substituted. “Any doubts regarding a defendant’s guilt may be resolved by the fact-finder unless the evidence is so weak and inconclusive that as a matter of law no probability of fact may be drawn from the combined circumstances. The Commonwealth may sustain its burden of proving every element of the crime beyond a reasonable doubt by means of wholly circumstantial evidence. Moreover, in applying the above test, the entire record must be evaluated and all evidence actually received must be considered. Finally, the trier of fact while passing upon the credibility of witnesses and the weight of the evidence produced, is free to believe all, part or none of the evidence.” Id. at 1054-1055.
The appellant’s alternative argument that the verdict is against the weight of the evidence, is addressed to the discretion of the trial court. Commonwealth v. Chine, 40 A.3d 1239, 1241 (Pa. Super. 2012); Commonwealth v. Bozic, 997 A.2d 1211, 1233 (Pa. Super. 2010). A claim of this type “concedes that there is sufficient evidence, but nevertheless contends that the trial judge should find the verdict so shocking to one’s sense of justice and contrary to the evidence as to make the award of a new trial imperative.” Commonwealth v. Robinson, 834 A.2d 1160, 1167 (Pa. Super. 2003). See also Chine, 1243-1244 quoting Commonwealth v. Sullivan, 820 A.2d 795, 806 (Pa. Super. 2003)(“the evidence must be ‘so tenuous, *362 vague and uncertain that the verdict shocks the conscience of the court.’”); Commonwealth v. Lyons, 833 A.2d 245, 258 (Pa. Super. 2003).
Trial judges, in reviewing a claim that the verdict is against the weight of the evidence do not sit as the thirteenth juror. Rather, the role of the trial judge is to determine that ‘notwithstanding all of the facts, certain facts are so clearly of greater weight that to ignore them or to give them equal weight with all the facts is to deny justice.’
Commonwealth v. Widmer, 744 A.2d 745, 752 (Pa. 2000).
The appellant contends that the Commonwealth failed to demonstrate that the “defendant acted with the intent to harass, annoy, or alarm [Ms. Quinones], but rather acted under the influence of transitory anger.”[17] In other words, even though the appellant spent thirty (30) to forty-five (45) minutes hurling invectives, it was not intended to harass Ms. Quinones. Instead, it merely represented passing anger generated by the treatment of his parents at ManorCare.
Harassment is defined in pertinent part as follows:
(a) Offense defined — A person commits the crime of harassment when, with the intent to harass, annoy or alarm another, the person
(1) strikes, shoves, kicks or otherwise subjects the other person to physical contact, or attempts or threatens to do the same.
*363 18 Pa.C.S. § 2709(a)(1) (emphasis added).
The appellant, by his threats to “shoot-up” the facility, not only upset Ms. Quinones, but her supervisors were alarmed enough to seek police intervention.[18] He also threatened to “physically push [staff]” into his parents room to show them how to provide care to his parents. All of the facts demonstrate that staff at ManorCare were alarmed, and the appellant was threatening to either mortally wound them or subject them to physical contact. 18 Pa.C.S. § 2709(a)(1).
The defense contends that there was no intent to “harass, annoy, or alarm” Ms. Quinones or other staff at ManorCare. In order to be guilty of harassment, the statute “requires the fact finder to infer a specific intent, and it specifies that the conduct must be of a non-legitimate nature — conduct which is not constitutionally protected.” Commonwealth v. Miller, 689 A.2d 238, 242 (Pa. Super. 1997). Counsel attempts to analogize the crime of harassment to those terroristic threats cases which interpreted that statute as not created to penalize “spur-of-the-moment threats” which result from transitory anger. Commonwealth v. Reynolds, 835 A.2d 720, 730 (Pa. Super. 2003); Commonwealth v. Anneski, 525 A.2d 373, 376 (Pa. Super. 1987). Those cases also recognize that “[b]eing angry does not render a person incapable of forming the intent to terrorize.” Reynolds, 835 A.2d at 730 quoting In re J.H., 797 A.2d 260, 263 (Pa. Super. 2002). In In re B.R., 732 A.2d 633, 638 (Pa. Super. 1999) “spur of the moment” statements were those that were “the product of a heated exchange *364 between parties made out of hysteria or anger that do not trigger foreseeable immediate or future danger....” Id.
Here, the appellant’s statements foretold of future actions on his part that would place staff at ManorCare in danger. The staff were aware of appellant’s familiarity with their facility, and Ms. Quinones was aware that the intensity and prolonged statements did not seem to be merely idle chatter. In this day and age, the appellant was fully aware how his statements would trigger action, and all the facts and circumstances demonstrate that it was his intention to do so.
In Commonwealth v. Hart, 559 A.2d 584 (Pa. Super. 1989) the evidence was sufficient to prove an “intent to harass” where the appellee left messages on the union’s answering machine which included “threats of death and destruction” to various members of the union. In so finding, the court stated the following:
The mere fact that appellee may have been upset at the union’s failure to assist him in obtaining employment does not negate his obvious intent to harass his listener. By the veiy nature of the language used, appellee no doubt knew, or should have known, that his messages would inflict terror on the listener as well as other members of the union. Any privilege enjoyed by appellee due to his recent difficulty in obtaining employment was lost the moment he began his tirade against union officials. To hold otherwise would render [the harassment statute] meaningless.
Id. at 587.
*365 Furthermore, the appellant’s initial statements to Officer Fryslin that Ms. Quinones must have overheard his conversation with his mother were false and misleading, and could be considered as an attempt to divert suspicion. “[Fjalse or contradictory statements by the accused are admissible...[to] infer [] that they were made with an intent to divert suspicion...” Commonwealth v. Glass, 405 A.2d 1236, 1242 (Pa. 1979) quoting Commonwealth v. Bolish, 113 A.2d 464, 476 (Pa. 1955)(overruled on other grounds); see also Commonwealth v. Young, 748 A.2d 166, 180 (Pa. 1999) quoting Commonwealth v. Carbone, 574 A.2d 584, 589 (Pa. 1990)(the fabrication of false and contradictory statements by an accused may be used by the fact finder to infer that they were made with the intent to mislead authorities and are evidence of guilt); Commonwealth v. Lettrich, 31 A.2d 155, 156 (Pa. 1943); Commonwealth v. Donnelly, 653 A.2d 35, 37 (Pa. Super. 1995); Commonwealth v. Calloway, 459 A.2d 795, 798 (Pa. Super. 1983).
For all the foregoing reasons, the evidence was sufficient to sustain the verdict of guilt to harassment, and that verdict was not against the weight of the evidence.
B. Refreshing Ms. Quinones’ Memory With Her Written Statement To Police
Throughout her testimony, Ms. Quinones remembered most of the details of the appellant’s tirade. For example, she remembered that appellant threatened to “shoot-up the place,” and that he would physically push staff into his parents’ room. However, she could not recollect one *366 relevant detail regarding appellant’s use of the word “gun.”[19]
Ms. Quinones testified almost six (6) months after the events, and readily acknowledged that looking at her written statement would refresh her recollection of the appellant’s statements.[20] She explained that the date of the offense, as well as other responsibilities at ManorCare, might have affected her ability to remember all of the details. She also testified that she was nervous and did not “feel comfortable” around the appellant.[21] This court overruled defense counsel’s objection, and permitted Ms. Quinones to review page three of her written statement.[22]
Pa.R.E. 612 states, in pertinent part, the following:
(a) Right to refresh memory. A witness may use a writing or other item to refresh memory for the purpose of testifying while testifying, or before testifying.
This rule preserves the common-law rules that a witness’s memory may be refreshed during testimony. Commonwealth v. Lamb, 455 A.2d 678, 685 (Pa. Super. 1983). “The proper procedure for a party to refresh his [or her] own witness’ recollection is to show the writing...to his witness and after the witness’ recollection is refreshed, to proceed with direct examination and have the witness testify from present recollection.” Id. (emphasis omitted).
*367 A three part is used to determine if the recollection of a witness may be refreshed:.
To permit the use of a writing in order to refresh the memory of a witness, the proponent must show: (1) that the witness’ present memory is inadequate; (2) that the writing could refresh the witness’ present memory; and (3) that reference to the writing actually does refresh the witness’ present memory.
Id. quoting Commonwealth v. Proctor, 385 A.2d 383, 385 (Pa. Super. 1978); see also Commonwealth v. Montgomery. 687 A.2d 1131, 1137 (Pa. Super. 1996)(collecting cases).
The proper foundation was laid to permit the Commonwealth to refresh Ms. Quinones’ memory. Her memoiy regarding the gun was “inadequate,” her own statement could refresh her present memoiy, and her written statement did refresh her present memory. See Commonwealth v. Wilson, 442 A.2d 760, 764 (Pa. Super. 1982)(Proper to use reports to recollect exact words which officers did not recall.).
It was not an abuse of discretion to permit the use of a portion of Ms. Quinones’ written statement to refresh her recollection. Nonetheless, any error would be treated as harmless. Montgomery, 687 A.2d at 1137-1138.
For all the foregoing reasons, the judgment of sentence should be affirmed.
ORDER
And now, this 8th day of January, 2015, it appearing that on November 14, 2014, the appellant filed a notice of *368 appeal in the above-captioned matter; it further appearing that on December 24,2014, counsel for the appellant filed a “concise statement of matters complained on appeal” pursuant to Pa.R.A.P. 1925(b); it further appearing that the attached opinion satisfies the requirements of Pa.R.A.P. 1925(a);
It is hereby ordered that the clerk of judicial records shall transmit the record in the above-captioned matter to the Superior Court forthwith;
It is further ordered that the clerk of judicial records shall include with the transmittal of the record the following documents:
1. Notes of testimony from the trial held on October 16, 2014.

. 18 Pa.C.S. § 2709(a)(1).

. Concise statement, ¶2.

. Id. at ¶1.

. Notes of Testimony, Trial (hereinafter N.T.T.), p. 22.

. Id. at pp. 26-27, 48.

. Id. at pp. 30, 37.

. N.T.T. at pp. 31-32,45,49-51.

. Id. at pp. 32-33, 37,45.

. Id. at pp. 33-34, 52-53, 55, 75.

. Id. at p. 45.

. Id. at p. 72.

. Id. at pp. 73-74.

. Id. at pp. 79-82.

. N.T.T. at pp. 85-87.

.Id. at pp. 87-88.

. Id. at p. 88.

. Concise statement, ¶2.

. N.T.T. at pp. 35-37.

. N.T.T. at pp. 45-56, 51, 55.

. Id. at pp. 36, 39,44.

. N.T.T. at p. 38.

. Defense counsel had a copy of Ms. Quinones’ written statement, and during cross-examination, used a transcript of a recording of the preliminary hearing in an effort to impeach Ms. Quinones about the use of the word “gun.”