J-S16022-16

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | |
|---|---|
| COMMONWEALTH OF PENNSYLVANIA | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| Appellee | |
| v. | |
| KARIMA MONTGOMERY | |
| Appellant | No. 1428 EDA 2015 |

Appeal from the Judgment of Sentence May 1, 2015
In the Court of Common Pleas of Philadelphia County
Criminal Division at No(s): CP-51-CR-0010953-2013

BEFORE:  OTT, J., DUBOW, J., and JENKINS, J.

MEMORANDUM BY OTT, J.:                    **FILED MARCH 29, 2016**

Karima Montgomery appeals the judgment of sentence entered May 1, 2015, in the Philadelphia County Court of Common Pleas.  Montgomery was sentenced to a period of time served to 23 months' imprisonment, followed by three years' probation, after the trial court, sitting without a jury, found her guilty of burglary, conspiracy, criminal trespass, theft and receiving stolen property.[1]  On appeal, Montgomery challenges the weight of the evidence supporting her convictions.  For the reasons below, we affirm.

The facts underlying Montgomery's arrest, as summarized by the trial court, are as follows:

_____

[1] 18 Pa.C.S. §§ 3502, 903, 3503(a)(1)(ii), 3921, and 3925, respectively.

On August 7, 2013, at or about 12:15 a.m., complainant, Wajeeha Sharif, accompanied by her six year old son, returned home from work and discovered [Montgomery], along with Rahneshia Harold Ellis and two other persons inside her home. She began screaming at which time the individuals fled her home exiting from the basement. She immediately contacted the police and advised them that there were people inside her house.

When the complainant entered her home she discovered that it had been ransacked. The contents of each drawer were emptied and strewn about, objects were scattered about in each room, and pictures slashed. She also noted that several items were missing including her pocketbook, a laptop computer, jewelry, and a gym bag. Complainant estimated that the value of the missing items was over $2,000.00.

The complainant was interviewed at police headquarters where she told police that she recognized some of the perpetrators because they attended school with her daughter. However, she did not know their last names. When police asked if she had any photographs of the perpetrators, complainant produced her daughter's school year book. Police retrieved the year book and upon paging through it the complainant identified three of the perpetrators she saw inside her residence.[2]

The complainant did not give permission to any of the persons she saw the night of the incident to be inside her residence or to take any items therefrom. She also stated that she was 100% [] sure that [Montgomery] and Rahneshia Harold Ellis were two of the four persons she saw the night of the incident.

Trial Court Opinion, 9/9/2015, at 2-3 (record citations omitted).

_____

[2] The complainant subsequently identified the fourth co-conspirator, Raydine Stanley, at Montgomery and Harold Ellis's preliminary hearing. She stated Stanley "was sitting behind me." N.T., 12/15/2014, at 13. Stanley later pled guilty for her role in the burglary.

Montgomery and Harold Ellis were subsequently arrested and charged with the above-stated crimes. They proceeded to a joint, nonjury trial, and, on December 15, 2014, were convicted of all charges.[3]

Prior to the start of the sentencing hearing on May 1, 2015, Montgomery's counsel made an oral motion for extraordinary relief, asserting the verdict was against the weight of the evidence. In support, counsel presented the testimony of Emily Smith, an investigator for the Defender Association of Philadelphia. Smith testified that she spoke with the complainant's daughter, Fatima, who told Smith her mother admitted to her that she made a mistake and that Montgomery "had nothing to do with this." N.T., 5/1/2015, at 14. When the trial court observed that the testimony was double hearsay, and the only way to introduce it as impeachment evidence was through Fatima herself, Montgomery's counsel stated Fatima was unwilling to cooperate. *Id.* at 17. The trial court denied the motion, and sentenced Montgomery to three concurrent terms of time served to 23 months' imprisonment, followed by three years' probation for the charges of burglary, conspiracy and criminal trespass. No further penalty was imposed on the remaining convictions.[4] This timely appeal followed.[5]

---

[3] Stanley testified at trial that she committed the burglary with two other individuals, neither of whom was Montgomery, and specifically stated Harold Ellis was not involved. *See* N.T., 12/15/2014, at 31-40.

[4] Harold Ellis received the same sentence as Montgomery. *See* N.T., 5/1/2015, at 57-58.

Montgomery raises one issue on appeal:

> Did not the trial court abuse its discretion by denying []
> Montgomery's post-trial motion for a new trial, as the verdict
> was so contrary to the weight of the evidence as to shock one's
> sense of justice, where the Commonwealth presented the
> testimony of only one uncorroborated and inconsistent witness,
> and [] Montgomery completely refuted the witness's
> identification testimony, such that a new trial is necessary in the
> interests of justice?

Montgomery's Brief at 3.

When considering a challenge to the weight of the evidence, we must

bear in mind:

> A weight of the evidence claim concedes that the evidence is
> sufficient to sustain the verdict, but seeks a new trial on the
> ground that the evidence was so one-sided or so weighted in
> favor of acquittal that a guilty verdict shocks one's sense of
> justice.

*Commonwealth v. Lyons*, 79 A.3d 1053, 1067 (Pa. 2013) (citations

omitted), *cert. denied*, 134 S.Ct. 1792 (U.S. 2014). Our review of a weight

claim is well-established:[6]

> Appellate review of a weight claim is a review of the exercise of
> discretion, not of the underlying question of whether the verdict

*(Footnote Continued)* ————————

[5] On May 11, 2015, the trial court ordered Montgomery to file a concise statement of errors complained of on appeal pursuant to Pa.R.A.P. 1925(b). Montgomery complied with the court's directive, and filed an initial concise statement on June 1, 2015. After receiving an extension of time to supplement the statement, Montgomery filed a supplemental concise statement on July 9, 2015.

[6] We note Montgomery properly preserved her weight of the evidence challenge by presenting an oral motion to the trial court prior to sentencing. *See* Pa.R.Crim.P. 607(A)(1).

is against the weight of the evidence. Because the trial judge has had the opportunity to hear and see the evidence presented, an appellate court will give the gravest consideration to the findings and reasons advanced by the trial judge when reviewing a trial court's determination that the verdict is against the weight of the evidence. One of the least assailable reasons for granting or denying a new trial is the lower court's conviction that the verdict was or was not against the weight of the evidence and that a new trial should be granted in the interest of justice.

However, the exercise of discretion by the trial court in granting or denying a motion for a new trial based on a challenge to the weight of the evidence is not unfettered. The propriety of the exercise of discretion in such an instance may be assessed by the appellate process when it is apparent that there was an abuse of that discretion. This court summarized the limits of discretion as follows:

> The term 'discretion' imports the exercise of judgment, wisdom and skill so as to reach a dispassionate conclusion, within the framework of the law, and is not exercised for the purpose of giving effect to the will of the judge. Discretion must be exercised on the foundation of reason, as opposed to prejudice, personal motivations, caprice or arbitrary actions. Discretion is abused when the course pursued represents not merely an error of judgment, but where the judgment is manifestly unreasonable or where the law is not applied or where the record shows that the action is a result of partiality, prejudice, bias or ill will.

***Commonwealth v. Widmer***, 744 A.2d 745, 753 (Pa. 2000) (internal citations omitted).

Montgomery asserts "the weight of the evidence was overwhelmingly in favor of acquittal." Montgomery's Brief at 12. She emphasizes the Commonwealth's case rested upon the testimony of a single witness, the complainant, "who testified to an incredible story that was uncorroborated

by any physical evidence" and that her identification was "completely refuted" by the defense. ***Id.***

Specifically, Montgomery argues the complainant had a reason to lie about Montgomery's involvement because she (Montgomery) was friends with the complainant's daughter, the complainant did not like her daughter's friends - whom she described as "females wanting to be males" - and Montgomery was involved in an altercation with the complainant's daughter at school. ***Id.*** at 14. Further, Montgomery emphasizes the complainant described Montgomery's hair on the night of the burglary as "twisted, little twisty braids." ***Id.***, *quoting* N.T., 12/15/2014, at 16. However, Montgomery's grandmother testified that Montgomery's hair was never in twisted braids, but rather, had always looked as it did on the day of trial, which she described as "a mess." ***Id.*** at 14-15. Additionally, Montgomery cites the testimony of Stanley, who admitted her involvement and named two other females, not Montgomery or Harold Ellis, as her co-conspirators. Montgomery also points out that Stanley testified she and Montgomery were not friends, so Stanley had no reason to lie for her. Lastly, Montgomery claims the complainant's testimony regarding the number of people involved in the burglary was "inconsistent and contradictory."[7] ***Id.*** at 15.

_____

[7] Montgomery refers to the complainant's testimony that, as she approached her home the night of the incident, she saw "a figure in [her] window." N.T., 12/15/2014, at 9. However, she never identified which of the four culprits that was. ***Id.*** at 21. Further, Montgomery asserts the complainant testified
*(Footnote Continued Next Page)*

Accordingly, she argues "[t]he evidence in this matter, the testimony of [one] self-contradictory … witness, cannot support the verdict in the face of conflicting evidence." *Id.* at 16.

However, the trial court, which sat as fact-finder, concluded "the verdict does not shock the conscience." Trial Court Opinion, 9/9/2015, at 4. The court explained:

> The complainant identified [Montgomery] immediately after the incident as one of the four persons she observed in her residence. Complainant was certain of that identification because she knew [Montgomery], who was a friend of the complainant's daughter. This Court, sitting as fact-finder was free to believe her testimony, and frankly the prior relationship between [Montgomery] and the complainant's daughter was not only conceded but admitted.
>
> Moreover, the fact that the guilty verdict herein was based solely on the testimony provided by the complainant does not render the verdict against the weight of the evidence. It is well-established that the uncorroborated testimony of a single person is sufficient to support a conviction. *E.g.* Commonwealth v. Trippett, 932 A.2d 188 (Pa. Super. 2007) (if believed by the factfinder, uncorroborated testimony of a victim is sufficient to sustain a conviction); Commonwealth v. Lamb, 455 A.2d 678, 686 (Pa. Super. 1983) ("It is clear that the uncorroborated testimony of a co-conspirator, if believed, is sufficient to support a conviction in a criminal conspiracy prosecution."); Commonwealth v. Budd, 140 A.2d 346 (Pa. Super. 1958) (testimony of drug-addict witness was sufficient to sustain conviction even absent corroboration).

*(Footnote Continued)* ⎯⎯⎯⎯⎯⎯⎯⎯⎯

on direct that she saw only three people in her home, but later, on cross-examination stated there were four people. **See** Montgomery's Brief at 16. Our review of the record, however, reveals that the complainant consistently maintained there were four people involved in the burglary. **See** N.T., 12/15/2014, at 9-10.

In addition, this Court did not find credible the testimony given by Raydine Stanley, who admitted her role in the incident and testified that [Montgomery] was not a participant. (N.T. 12/15/14, 31). Ms. Stanley was previously convicted and sentenced when she testified and thus, had nothing to lose by testifying in favor of [Montgomery]. Her credibility was also undermined by her inability to identify the third person who allegedly participated in the burglary. (N.T. 12/15/14, 35).

Finally, while the defense did present testimony questioning the description given by the complainant and good character evidence, this Court discounted the testimony because of the complainant's certitude in her identification and the fact that the complainant got a good look at [Montgomery] the night of the incident.

Trial Court Opinion, 9/9/2015, at 4-5.

Our review of the notes of testimony from Montgomery's trial reveals no abuse of discretion on the part of the trial court. The court determined the complainant's testimony was credible, as was its prerogative. The fact that Stanley refuted the complainant's identification of Montgomery was immaterial once the court determined Stanley's testimony was not credible. Furthermore, as the Commonwealth notes in its brief, the testimony regarding Montgomery's hair at the time of the burglary was provided by Montgomery's grandmother, who "was obviously biased." Commonwealth's Brief at 7. The facts of this case turn solely on the credibility determinations of the fact-finder. Under these circumstances, and bound by our standard of review, we cannot say the court abused its discretion in finding the complainant credible, and Montgomery's evidence incredible. *See Widmer*, *supra.* Accordingly, no relief is warranted.

Judgment of sentence affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary


Date: <u>3/29/2016</u>