513 A.2d 1014

**William NOECKER and Theresa Noecker, Appellees,**

v.

**JOHNS–MANVILLE CORPORATION and Johns-Manville Sales Corporation, Defendant-Appellant,**

**and**

**Owens-Corning Fiberglas Corporation; Celotex Corporation; 48 Insulation; Eagle-Picher, Defendants-Appellees.**

Superior Court of Pennsylvania.

Argued Feb. 13, 1986.

Filed Aug. 8, 1986.

464

Charles W. Craven, Philadelphia, for appellants.

Martin Greitzer, Philadelphia, for appellees.

Before MONTEMURO, HOFFMAN and CERCONE, JJ.

MONTEMURO, Judge:

On April 5, 1977, plaintiffs-appellees, William and Theresa Noecker, brought an action against defendant-appellant, Johns-Manville Corporation (hereinafter Johns-Manville), and certain other corporate entities, claiming that Mr. Noecker had contracted asbestosis as a result of exposure at his place of employment (Combustion Engineering, Inc.) to asbestos products either manufactured or sold by the various defendants. In its responsive pleadings, appellant denied that Mr. Noecker's disability was caused by asbestosis induced by exposure to any of its products. Appellant posited that the disability was either caused by silicosis (a disease resulting from prolonged exposure to silica) or resulted from exposure to products of the co-defendants. Appellant also filed cross-claims for contribution against the co-defendants.

Before trial, three of the defendants effected releases with plaintiffs-appellees which barred any recovery by plaintiffs-appellees against them. Based on its release, one of the settling defendants, Owens Corning Fiberglas Corp., then filed a motion for severance as to all cross-claims filed by it and against it. The release, which expressly denied Owens Corning's joint tortfeasor status, provided, *inter alia*, that:

It is further agreed and understood by the parties hereto, that any other person or organization whom we [plaintiffs] claim are liable to us for our injuries, losses

and damages shall not be entitled to a satisfaction or reduction or pro rata reduction of damages we are claiming against them by reason of the payment herein, unless it is adjudicated that Releasees are Joint Tortfeasors with said person or organization. In the event that Releasees are adjudicated to be Joint Tortfeasors then the payment herein shall constitute a reduction to the extent of the pro rata share of liability of Releasees for the damages recoverable by us from the other tortfeasors.

On the first day of trial, the court entertained Owens Corning's motion for severance on its own behalf and on behalf of the other settling defendants as well. Appellant opposed the granting of severance solely on the basis that severance would prejudice it in its pursuit of contribution claims against the settling defendants in that it would be forced to bring a separate action for contribution at a later date. After hearing argument on the issue, the trial court granted severance for the settling defendants, directing separate trials as to any cross-claims for contribution and/or indemnity. The case proceeded to trial before a jury, with Johns-Manville as the sole defendant left in the case.[1] The trial resulted in a verdict against appellant in the amount of $550,000 in compensatory damages and $50,000 in punitive damages. Appellant subsequently filed a motion for judgment notwithstanding the verdict and for a new trial. On April 28, 1982, the trial court denied appellant's motions and entered judgment (which reflected delay damages) in favor of plaintiffs-appellees. This appeal followed.[2]

Appellant presents the following issues for our review:

Does a trial court commit reversible error when it severs and orders a separate trial of the claims for contribution made by a defendant against co-defendants, who have entered into joint-tortfeasor settlements with

1. Motions for *non pros* and dismissal were granted as to the remaining defendants.

2. On appeal, briefs have been submitted by appellant, plaintiffs-appellees, and defendants-appellees (the settling defendants).

the plaintiff but without an adjudication or admission of their status as joint tortfeasors, and then enters a judgment for plaintiffs against the non-settling defendant for the full amount of the damages awarded by jury plus Rule 238 delay damages on that amount?

■ Did the trial court commit prejudicial error during its instructions to the jury when, in connection with the key factual disputes, it recited evidence in a view favoring only plaintiffs?

■ Did the trial court commit prejudicial error by refusing to permit Dr. Bolden from testifying that his opinion as to the nature and cause of Mr. Noecker's illness remained unchanged?

Appellant's brief at 5. Appellant asks us to vacate the judgment below and order a new trial on plaintiffs-appellees' claim, with the settling defendants being required to remain in the case.

We will first address appellant's contention that the trial court erred in ordering severance of the claims for contribution brought by appellant against the settling defendants.

Pa.R.C.P. 213(b) provides:

(b) The court, in furtherance of convenience or to avoid prejudice, may, on its own motion or on motion of any party, order a separate trial of any cause of action, claim, or counterclaim, set-off, or cross-suit, or of any separate issue, or of any number of causes of action, claims, counterclaims, set-offs, cross-suits, or issues.

Appellant contends that the trial court abused the discretion afforded it by Rule 213 in granting severance because such severance severely prejudiced appellant's claims for contribution against the settling defendants, which claims are authorized by section 8324 of the Uniform Contribution Among Tortfeasors Act [hereinafter the Act].[3] The Act attempts to insure that where there are joint tortfeasors, none will have to pay more than its proportionate share of the common liability. Section 8324 of the Act provides for

**3.** 42 Pa. C.S. § 8321 *et seq.*

the right of contribution among joint tortfeasors. That is, if one joint tortfeasor pays more than its share of the common liability, it is entitled under section 8324 to contribution from the other tortfeasors, i.e., to be reimbursed by them proportionately. Section 8326 of the Act provides that, although a release by the injured person of one joint tortfeasor does not discharge the other tortfeasors, it does reduce the amount that the injured person can recover from the unreleased tortfeasor in the amount of the consideration paid for the release or by the proportion provided for in the terms of the release, whichever is greater. However, neither of these sections is applicable until joint tortfeasor status is established.

Appellant contends that, even though plaintiffs-appellees were precluded from recovering against the settling defendants as a result of the releases, the settling defendants should have been required to remain in the case so that, in reference to appellant's contribution claims against them, their alleged joint tortfeasor status could have been determined at that point. Appellant contends it was severely prejudiced by the severance because it will now have to pursue its contribution claims against the settling defendants in a separate action before another jury. This, appellant contends, involves problems of additional expense, the reassembling of witnesses, and the use of aged proofs.

The trial court justified the severance by stating that, contrary to appellant's assertion, a separate action for contribution would not be unduly burdensome. Noting the great number of asbestos related cases involving multiple defendants on file with the court and the fact that such cases were often both lengthy and complex, the trial court stated that the orderly administration of the judicial process required that efforts be made to simplify and reduce trial issues and trial time. The court concluded, "Absent a stronger showing of inconvenience, the party seeking to oppose a severance must defer to the exercise of discretion by a court endeavoring to assure the orderly administration of its docket and to facilitate and encourage the amicable

resolution of its cases, in whole or in part." Trial court's opinion at 6. Defendants-appellees, the settling defendants, argue that the severance was correct in that the "court properly considered convenience to the court, the parties, and society, limited judicial resources, and the expense to those parties against whom the plaintiff no longer had a claim. It promoted the fair administration of justice by simplifying the issues for the jury." Defendants-appellees' brief at 3.

We find that the trial court considered the relevant factors in responding to appellant's argument that severance would severely prejudice it in pursuing its contribution claims. Our research has not revealed any case, nor has appellant directed our attention to any case, which requires that settling defendants remain to participate in trial so that a non-settling defendant can pursue its contribution claims against them. Although it clearly would have been more convenient for appellant to have had its contribution claims against the settling defendants decided in one case, we find that requiring appellant to pursue those claims in a separate action is not so unduly burdensome as to render the trial court's action in granting severance an abuse of discretion.[4] We note that even if we were to accept the merits of appellant's argument and order a new trial, such action would in large part be a futile gesture since appellant would still be faced with many of the problems which he argues

4. In arriving at this conclusion, we have not considered the possibility that appellant's right to seek contribution may, in fact, have been lost pursuant to 42 Pa. C.S. § 8327, which provides:

§ 8327. Liability to make contribution as affected by release.
A release by the injured person of one joint tort-feasor does not relieve him from liability to make contribution to another tort-feasor, unless the release is given before the right of the other tort-feasor to secure a money judgment for contribution has accrued and *provides for a reduction to the extent of the pro rata share of the released tort-feasor of the injured person's damages recoverable against all the other tort-feasors.* (Emphasis added).

Clearly, if appellant may not now seek contribution against the settling defendants, the severance, which eliminated the possibility of any *pro rata* reduction in the verdict, worked to its extreme detriment. This point, however, was not raised below nor has it been raised on appeal.

rendered the severance severely prejudicial in the first place, *i.e.*, the reassembling of witnesses, the use of aged proofs, and additional expense.

On appeal, appellant attempts to raise an additional argument supporting its contention that severance was erroneous. Appellant relies primarily on *Davis v. Miller*, 385 Pa. 348, 123 A.2d 422 (1956), which involved a defendant who had settled on a release providing for a reduction in the amount of damages the plaintiffs could recover from the non released defendant to the extent of the released defendant's *pro rata* share of liability. Thus, under the release, if the settling defendant were determined to be a joint tortfeasor, the non settling defendant's liability to plaintiff would be reduced to his proportionate share. The *Davis* court required the released defendant to remain in the case to enable the jury to determine his joint tortfeasor status, thereby protecting the non released defendant's right to a *pro rata* reduction in the verdict.

Appellant argues on appeal that, under *Davis* and section 8326 of the Act, the settling defendants in the instant case were required to participate in the trial in order to protect appellant's right to a *pro rata* reduction in the verdict pursuant to the terms of the releases. However, although appellant raised this argument in post-trial motions, it did not present the argument at any time during the trial. Therefore, the hearing on the motion to sever proceeded solely on the issue of appellant's contribution claims and the prejudice it might suffer should it be forced to proceed on those claims in a separate action. In order to preserve an issue for appeal, a litigant must make a timely and specific objection at trial. *Reilly v. Southeastern Pennsylvania Transportation Authority*, 507 Pa. 204, 489 A.2d 1291 (1985). We will not consider a claim on appeal which was not called to the trial court's attention at a time when any error committed could have been corrected. *Kintner v. Claverack Rural Electric Co-operative, Inc.*, 329 Pa.Super. 417, 478 A.2d 858 (1984). We accordingly will not address the merits of appellant's argument concerning

retention of the settling defendants in order to effectuate a *pro rata* reduction in the verdict.[5]

Appellant next argues that the trial court's instruction to the jury impermissibly favored plaintiffs-appellees in three respects: (1) the identity of the suppliers of raw asbestos fiber to the plant where Mr. Noecker worked,[6] (2) the respective quantities of silica and asbestos in the plant, and (3) the diagnosis by Mr. Noecker's physician. Appellant contends that the charge failed to provide the jury with a balanced view of the evidence in the above three respects in that it recited only evidence in favor of plaintiffs-appellees.

■■■ In evaluating a jury charge to determine whether prejudicial error was committed with respect to the complaining party, we must consider the charge in its entirety. *Dunlap v. Larkin,* 342 Pa.Super. 594, 493 A.2d 750 (1985). The trial judge is afforded discretion in summarizing evidence adduced at trial, and the extent of his review of the evidence depends largely on the circumstances of the case. *McGowan v. Devonshire Hall Apartments,* 278 Pa.Super. 229, 420 A.2d 514 (1980).

Our review of the charge in the instant case reveals that in referring to the supply of raw asbestos fiber to the plant, the judge stated that there was testimony that it came from various sources, and that several witnesses had testified that appellant had supplied either a majority or 75%. Appellant argues that the trial judge should have pointed out that when questioned as to the sources of the raw asbestos which he had unloaded, Mr. Noecker named several suppliers but did not mention appellant. Appellant's second ob-

---

5. Although we do not address appellant's claim, we wish to point out that the principle established by *Davis v. Miller,* 385 Pa. 348, 123 A.2d 422 (1956), *i.e.,* that a defendant settling on a *pro rata* release is required to participate in the trial so that its joint tortfeasor status can be determined and the reduction in the verdict be accomplished, has been reaffirmed in numerous cases. *E.g., Slaughter v. Pennsylvania X–Ray Corp.,* 638 F.2d 639 (3d Cir.1981);· *National Liberty Life Ins. Co. v. Kling Partnership,* 350 Pa.Super. 524, 504 A.2d 1273 (1986); *Charles v. Giant Eagle Markets,* 330 Pa.Super. 76, 478 A.2d 1359 (1984).

6. Mr. Noecker's job function consisted primarily of loading and unloading boxcars and trucks.

jection to the charge concerns the fact that in stating that the overall ratio of asbestos to silica in the plant was nine to one, the court should also have said that the evidence showed that Mr. Noecker worked primarily on the first floor, where the proportions were reversed, *i.e.,* the ratio of silica to asbestos was nine to one. Finally, appellant objects to the court's failure to qualify the testimony of Mr. Noecker's physician, Dr. Philip Pearlstein, who testified that Mr. Noecker was suffering from asbestosis. Appellant contends that the trial court should have reminded the jury that Dr. Pearlstein had admitted on cross-examination that he had testified at an earlier deposition that Mr. Noecker suffered from silicosis.

██ We find appellant's claims to be without merit. We note that none of the trial court's statements objected to by appellant were misstatements of the evidence. In addition, before beginning its charge the court specifically told the jury that the case had been both lengthy and complex, and that it (the court) could not possibly summarize all the evidence; therefore, the jury members were to rely on their own memory as to the evidence adduced at trial. This admonition was repeated several times. After appellant objected to the charge on the above grounds, the trial court informed the jury:

I am also reminded to again state to you my reference to any portions of the testimony is not intended and was not intended to be all-encompassing. We would be here for days if I were to attempt to do that. I merely referred to portions of the testimony. That is not to suggest to you that you should not consider all of the testimony whether I refer to it or not.

And, again, if my recollection doesn't tie with your recollection, you ignore mine no matter what I have said, no matter when I attempted to quote anybody or anything like that. If it differs from your recollection, you ignore it.

N.T. July 9, 1981, at 129. Our careful examination of the court's brief summarization of the evidence reveals that it

was not one sided in that it did include evidence favorable to appellant's case.[7] We conclude that, given the court's repeated admonitions to the jury to rely on their own memory of the testimony and not the court's summarization and the fact that the instruction was not one sided in plaintiffs-appellees' favor, appellant's claim that the instructions contained reversible error is without merit.

Appellant's final contention is that the court erred in impermissibly restricting the testimony of one of its witnesses, Dr. David M. Bolden.

Before addressing the merits of appellant's claim, we point out that the trial judges of this Commonwealth exercise broad powers concerning the conduct of trial, and have wide discretion in limiting the scope of both direct and cross examination of witnesses. *Williams v. Philadelphia Transportation Co.*, 415 Pa. 370, 203 A.2d 665 (1964).

The record reveals that Dr. Bolden was a staff radiologist at Suburban General Hospital who was called in for a consultation when Mr. Noecker was first admitted to the hospital in 1974. Dr. Bolden was asked by Mr. Noecker's family physician, Dr. Philip Pearlstein, to read a series of X-rays on Mr. Noecker. Dr. Bolden did so and testified at trial on direct examination that, based on this reading, he had concluded that Mr. Noecker was suffering from silicosis, not asbestosis. Appellant wanted to further question Dr. Bolden as to whether he had seen any X-rays of Mr. Noecker since 1974 and, if so, was his conclusion unchanged. The trial court sustained plaintiffs-appellees' objection to that question, stating that Dr. Bolden's testimony would be restricted to the time when the doctor was actually involved in the case, *i.e.*, the 1974 radiological study.

■ Appellant contends that the trial court's action was unfair and biased in that the court had allowed one of plaintiffs-appellees' witnesses, Dr. Donald Sesso, to testify as to Mr. Noecker's prognosis on the basis of information

7. For example, the court reminded the jury that two of Mr. Noecker's physicians had testified that appellant was suffering from silicosis, not asbestosis.

the doctor had acquired in 1980, after he had ended professional contact with Mr. Noecker. We reject appellant's claim. The record reveals that although Dr. Sesso, one of Mr. Noecker's treating physicians, did not personally examine Mr. Noecker after 1977, his medical partner did so in 1980, and, at that point, Dr. Sesso discussed the case with his partner and reviewed the results of the examination. Thus, there was a rational basis for the court's decision to admit Dr. Sesso's testimony, which was based on professional contact with Mr. Noecker's case, and to disallow the question to Dr. Bolden, which concerned events occurring after Dr. Bolden was no longer involved in the case. We can discern no bias or prejudice in plaintiffs-appellees' favor in this regard.

Having determined that none of appellant's claims are meritorious, we affirm the order entered below.

Order affirmed.