642 A.2d 1088

James and Joanne DIDIO, H/W

v.

PHILADELPHIA ASBESTOS CORPORATION, GAF Corpora-
tion, Raymark Industries, Inc., Southern Textile, Garlock, Inc.,
Fibreboard Corporation, Eagle–Picher Industries, Inc., Keene
Corporation, Celotex Corporation, J.P. Stevens and Company,
Inc. and Owens–Illinois Glass Co.

Appeal of FIBREBOARD CORPORATION (at 2867).

James DIDIO and Joanne Didio, H/W

v.

PACOR, INC., Eagle-Picher Industries, Keene Corporation,
Southern Textile Company, J.P. Stevens Company, Garlock,
Inc., Celotex, Inc., Owens–Illinois Glass Company, Fibreboard
Corporation, GAF Corporation, Forty–Eight Insulation, Inc.
and Raymark, Inc.

Appeal of KEENE CORPORATION (at 2868).

James DIDIO and Joanne Didio, H/W

v.

PACOR, INC., Eagle-Picher Industries, Southern Textile Co., J.P.
Stevens Co., Garlock, Inc., Celotex, Inc., Owens–Illinois Glass
Company, Fibreboard Corporation, GAF Corporation, Forty–
Eight Insulation, Inc. and Raymark, Inc.

Appeal of OWENS–ILLINOIS GLASS CO. (at 2869).

Superior Court of Pennsylvania.

Argued March 9, 1993.

Filed April 11, 1994.

194

Carol Wideman, Philadelphia, for Fibreboard, appellant (at 2867) Keene Corporation, appellant (at 2868) and Owens–Illinois, appellant (at 2869).

David A. Cohen, Philadelphia, for Keene Corp., appellee (at 2867) and appellant (at 2868) and Owens–Illinois, appellant (at 2869).

Steven J. Cooperstein, Philadelphia, for Didio, appellees (at 2867, 2868 and 2869).

Before CAVANAUGH, JOHNSON and HOFFMAN, JJ.

HOFFMAN, Judge.

This is an appeal from the Order of the Honorable Sandra Mazer Moss dated July 22, 1992 which provides as follows:

AND NOW, THIS 22nd day of July, upon consideration of defendant Keene's, Fibreboard's, and Owens–Illinois' motions for New Trial and/or Remittitur and Plaintiff's responses thereto, it is hereby ORDERED and DECREED said motions are DENIED.

Upon consideration of Plaintiff DiDio's Delay Damages Motion against Keene, it is hereby Ordered and Decreed said Motion is Granted and delay damages are awarded in the amount of $134,960.96 against Keene Corporation for James DiDio.

Judgment is hereby entered in the amount of $284,960.95 for James DiDio against Keene which reflects the $150,000 verdict share together with the aforesaid delay damages.

Upon consideration of DiDio's Delay Damages Motion against Fibreboard, it is hereby ORDERED and DECREED said Motion is GRANTED and delay damages are

awarded in the amount of $134,960.95 against Fibreboard Corporation and for James DiDio.

Judgment is hereby entered in the amount of James DiDio against Fibreboard which reflects the $150,000 verdict share together with the aforesaid delay damages.

Upon consideration of Plaintiff DiDio's Delay Damages Motion against Owens–Illinois, Inc., it is hereby ORDERED and DECREED said Motion is Denied as untimely.

Judgment is hereby entered in the amount of $900,000 for James DiDio against Owens–Illinois which reflects Owens–Illinois' verdict share alone.

.   .   .   .   .

Trial Court Order of July 22, 1992.

Appellant Fibreboard Corporation (hereinafter "Fibreboard"), presents the following questions for our review:

I.   Does the law of Pennsylvania permit the admission of hearsay opinion testimony from a non-testifying witness who is unavailable for cross-examination where the opinion testimony addressed the key issue in the case?

II.   Does the law of Pennsylvania permit a plaintiff to recover damages on the basis of plaintiff's counsel's fear, as expressed in his summation, that the defendants may be bankrupt in the future and therefore not answerable for damages should the jury fail to award damages presently?

III.   Does the law of Pennsylvania permit a plaintiff to recover damages for physical pain and suffering where the plaintiff has failed to allege any such damages?

IV.   Whether the court below erred in denying Fibreboard's Motion for New Trial on the grounds that the amount of the jury's award was not supported by the weight of the evidence and was arbitrary and capricious?

V.   Whether the court below committed an error of law in denying Fibreboard's Motion for Remittitur?

Fibreboard's Brief at 3.

Appellant Keene Corporation (hereinafter "Keene"), presents the following question for our review:

Whether the Trial Court erred in denying defendant Keene Corporation's motion for substantial remittitur ... or in the alternative to grant a new trial.

Keene's Brief at 11.

Finally, appellant Owens–Illinois Glass Company (hereinafter "O–I"), presents the following questions for our review:

I. Whether the order of the trial court dated July 22, 1992, was a "final order" as it was promulgated in the absence of the court's adjudication of Owens–Illinois' cross-claims, such as to confer jurisdiction of the Pennsylvania Superior Court over this matter?

II. Whether the trial court's *sua sponte* severance of Owens–Illinois' cross-claims, for adjudication in the 21st century, resulting in extreme prejudice to Owens–Illinois, violated defendant's rights as guaranteed by statute?

III. Whether the trial court's severance of Owens–Illinois' cross-claims, for adjudication in the 21st century, without notice or an opportunity to be heard, violated Owens–Illinois' constitutional guarantees of due process, right to a jury trial and access to courts?

O–I's Brief at 4. For the reasons set forth below, we stay in part, reverse in part, vacate in part and affirm in part.

On October 22, 1982, appellees, James and Joanne Didio, filed a complaint seeking to recover for injuries arising out of Mr. Didio's occupational exposure to asbestos. The defendants in appellees' complaint included Fibreboard, Keene, O–I and a number of other manufacturers, suppliers and distributors of asbestos containing products. At the time of trial, only Fibreboard, Keene and O–I remained as defendants.[1]

Before trial, the asbestos calendar judge consolidated the instant case with two other similar actions filed by Thomas Brown and John Andrews. The damages phase of the trial

---

i. The other defendants were either under the protection of federal bankruptcy laws, had been granted summary judgment or had settled with appellees.

commenced on September 19, 1991 before the Honorable Charles Right and a jury.[2]

At trial, the relevant facts were as follows. James Didio was employed in various capacities in the Philadelphia Naval Shipyard between 1958 and 1965, and from 1966 until the time of trial. During the first seven of those years, Mr. Didio worked as a pipefitter and was exposed to asbestos throughout each workday. He continued to be exposed to asbestos regularly in the following ten years, although not continuously during each workday as in the past.

In 1982, the shipyard dispensary informed Mr. Didio that his chest X-ray was not normal and sent him to see a pulmonary specialist, Dr. Badra. It was Mr. Didio's first indication that he had an asbestos-related disease. At trial, William Fineman, M.D., testified that Mr. Didio has asbestosis and pleural thickening. Dr. Fineman observed asbestosis and pleural thickening on X-rays taken as early as 1974. Over the intervening seventeen years, the diseases had steadily progressed to the point that, as of the time of trial, the pleural thickening was extensive. Dr. Fineman also testified as to the cancer risks faced by Mr. Didio as a result of his asbestos exposure. Mr Didio stated that his knowledge of these risks is constantly on his mind and has caused a marked change in his personality. Finally, the parties stipulated that Mr. Didio's life expectancy is an additional 24.6 years.

At the conclusion of the damages phase of the trial, on September 26, 1991, the jury returned a verdict in favor of Mr. Didio in the amount of $900,000. All of the parties at trial, with the exception of O–I, presented to the court a stipulation as to liability.[3] On September 30, 1991, the trial proceeded on liability with O–I remaining as the sole defendant. After testimony of Mr. Didio and George Watts [4] was heard, O–I requested that its cross-claims against its co-defendants be heard. The trial court denied this request and

2. Trial was in reverse bifurcated form; that is, trial proceeded on damages before liability.

3. Keene and Fibreboard each stipulated to 1/6 liability.

4. George Watts was a co-worker of Mr. Didio.

ordered that O–I's cross-claims were severed. The jury sub-sequently found O–I to be a substantial contributing factor to Mr. Didio's injuries.

The trial court then entered a verdict finding Keene and Fibreboard, pursuant to their stipulations, each liable for one-sixth of the damages awarded to appellees and finding O–I liable to appellees for the entire amount of damages awarded to appellees. Keene, Fibreboard and O–I timely moved for post-trial relief, and appellees petitioned for delay damages. However, Judge Wright retired before resolving those motions and the matter was reassigned to Judge Moss. On July 22, 1992, Judge Moss issued an order and opinion denying Keene's, Fibreboard's and O–I's motions, granting appellees' petition for delay damages, and entering judgment in the amount of $248,960.95 each against Keene and Fibreboard and in the amount of $900,000 against O–I. After docketing the judgments on August 11, 1992, Keene's, Fibreboard's and O–I's timely appeals followed.

On December 3, 1993, Keene Corporation filed a bankruptcy petition under 11 U.S.C. § 301 in the United States Bankruptcy Court for the Southern District of New York. In light of the automatic stay provisions of the United States Bankruptcy Code, we must preliminarily determine whether this court may address the merits of Keene's appeal.

11 U.S.C. § 362(a)(1) provides as follows:

(a) Except as provided in subsection (b) of this section, a petition filed under section 301, 302, or 303 of this title . . . operates as a stay, applicable to all entities, of—

(1) the commencement or continuation, including the issu-ance or employment of process, of a judicial, administra-tive, or other action or proceeding against the debtor that was or could have been commenced before the commence-ment of the case under this title, or to recover a claim against the debtor that arose before the commencement of the case under this title[.]

*Id.*

We point out that this stay includes "appeals in actions that were originally brought against the debtor, re-

gardless of whether the debtor is the appellant or the appellee." *Borman v. Raymark Industries, Inc.,* 946 F.2d 1031, 1033 (3rd Cir.1991). Moreover, the stay may not be waived by either creditor or debtor. *Maritime Elec. Co., Inc. v. United Jersey Bank,* 959 F.2d 1194, 1206 (3rd Cir.1991). Finally, "[t]he automatic stay's effect on judicial proceedings against the debtor does not depend upon whether the court finds *for* or *against* the debtor." *Id.*

As Keene's appeal arises from an action brought against Keene before the filing of his bankruptcy petition, we must stay Keene's appeal pending the conclusion of the bankruptcy proceedings.[5] Moreover, as the automatic stay applies only to the bankrupt debtor, we must sever Keene from the instant appeal. *See* 11 U.S.C. § 362(a). *See also Maritime Elec. Co., Inc. v. United Jersey Bank,* 959 F.2d at 1205. Accordingly, we will proceed with the merits of Fibreboard's and O–I's respective claims in seriatim.

## I.

Fibreboard claims that the lower court erred in failing to grant its motion for directed verdict as appellees failed to allege any damages for pain and suffering.[6] Specifically, Fibreboard contends that as James Didio's pleural thickening and asbestosis conditions did not cause Mr. Didio any current ill health or functional impairment, they are not injuries entitling appellees to compensation. We agree and accordingly reverse and vacate the judgment entered against Fibreboard.

It is well-settled that "[w]hen deciding whether to grant a motion for a directed verdict, the trial court must consider the facts in the light most favorable to the non-moving party and must accept as true all evidence which supports that party's

**5.** Although Keene's appeal is stayed under 11 U.S.C. § 362(a)(1), we do not imply that it would be improper for the bankruptcy court to lift or modify the stay to permit disposition.

**6.** Because of our disposition of Fibreboard's claim for a directed verdict, we need not address Fibreboard's other contentions of trial court error.

contentions and reject all adverse testimony." *Boyce v. Smith–Edwards–Dunlap Co.*, 398 Pa.Super. 345, 354, 580 A.2d 1382, 1387 (1990), *appeal denied,* 527 Pa. 650, 593 A.2d 422 (1991). On review, we will reverse the trial court's decision only if there is an abuse of discretion or error of law. *Id.*

This court has recently held *en banc* that asymptomatic pleural thickening is not compensable as a matter of law.[7] *Giffear v. Johns–Manville, Corp., et al.*, 429 Pa.Super. 327, 632 A.2d 880 (1993). In their brief on appeal, appellees concede that Mr. Didio's pleural thickening was asymptomatic.[8] Ac-

**7.** Although *Giffear* was filed after the complaint in the underlying action, "[w]here an appellate decision overrules prior law and announces a new principle, unless the decision specifically declares the ruling to be prospective only, the new rule is to be applied retroactively to cases where the issue in question is properly preserved at all stages of adjudication up to and including direct appeal." *Blackwell v. Commonwealth, State Ethics Comm'n*, 527 Pa. 172, 188, 589 A.2d 1094, 1102 (1991) (quoting *Commonwealth v. Cabeza*, 503 Pa. 228, 233, 469 A.2d 146, 148 (1983)). As *Giffear* does not specify whether its holding is prospective or retroactive and as Fibreboard has properly preserved the issues dealt with in *Giffear*, we will apply the holding in *Giffear* to the instant action.

**8.** In their brief, appellees state the following:

Although Mr. Didio was not shown to suffer from physical symptoms directly linked to his asbestos disease[s], Dr. Fineman testified that given Mr. Didio's young age, the degree of disease is alarming. His pleural thickening was already severe, and both diseases had spread a great amount over the years. In addition, Mr. Didio is at substantially increased risk of contracting lung cancer and mesothelioma. He suffers great anxiety as a result of his increased cancer risk. He described his initial reaction to the diagnosis of his conditions as devastation. His fear of a premature death from cancer is on his mind daily and has altered his personality from that of active and outgoing to cautious and sedentary. He is constantly frightened that his condition will become aggravated.

The plaintiff has a severe amount of disease, so severe as to be alarming in so young a person. His diseases have already progressed and may worsen in the future. There is no possibility of treatment, reversal or cure. He will spend long years of his life at increased risk of and in fear of cancer. Although defendants attempt to minimize the numerical risk, when viewed over such a large number of years, the risk is quite substantial. The plaintiff's fears stemming from these risks are quite real and valid. The fears have plagued him for nearly ten (10) years, and can be expected to affect his life for twenty-five (25) more. These considerations fully justified the jury's award.

cordingly, appellees are clearly not entitled to compensation for Mr. Didio's pleural thickening.

Likewise, we find this court's holding in *Giffear* to be dispositive of the issue of compensability of Mr. Didio's asbestosis. In *Giffear*, this court held that "claims for risk and fear of cancer no longer form a basis for recovery in asbestos cases where cancer is not present." *Giffear*, 429 Pa.Super at 343, 632 A.2d at 888. As appellees concede that Mr. Didio's basis for recovery from his asbestosis was the fear and risk of contracting future cancer, we hold that appellees are not entitled to recovery for Mr. Didio's asbestosis. *See* Appellees' Brief (Fibreboard and Keene) at 14–16. Accordingly, since appellees have no legally cognizable claim regarding Mr. Didio's pleural thickening or asbestosis, a directed verdict should have been granted to Fibreboard. We therefore vacate the judgment entered against Fibreboard.

## II.

Next, we will address O–I's claims. Preliminarily, we point out that O–I does not contest the basis for the jury's finding of damages and liability. Hence, although we vacate the judgment entered against Fibreboard, this does not affect the validity of the judgment entered against O–I. *See, e.g., General Electric Credit Corp. v. Aetna Cas. & Sur. Co.*, 437 Pa. 463, 263 A.2d 448 (1970). O–I first contends that as the July 22, 1992 order of the trial court was entered in the absence of an adjudication of its cross-claims, it was not a final order and, therefore, the Superior Court does not have jurisdiction to hear this appeal. We disagree.

■ Pa.R.App.P. 341, as amended through September 12, 1982, provides that "an appeal may be taken as of right from any final order of any administrative agency or lower court." Pa.R.A.P. 341(a) (as amended through September 12, 1982).[9]

Appellees' Brief (Fibreboard and Keene) at 14–16.

**9.** Since the current Pa.R.App.P. 341 applies only to cases filed by July 6, 1992 and as the complaint in the instant action was filed on October 22, 1982, we must follow our judiciary's interpretation and application

For the purposes of Rule 341, an order is final and, therefore, appealable when it "effectively ends litigation or disposes of the entire case." *See Davis Supermarkets, Inc. v. Local 23,* 368 Pa.Super. 290, 292, 533 A.2d 1068, 1070 (1987); *Sweener v. First Baptist Church,* 516 Pa. 534, 539, 533 A.2d 998, 1000 (1987). *See also* 42 Pa.C.S. § 742.

In *Stevenson v. General Motors Corp.,* 513 Pa. 411, 521 A.2d 413 (1987), our Supreme Court held that where the trial court has bifurcated the liability and damages phases of a trial, final judgment cannot be entered on the jury's verdict as to the first phase until a verdict has been entered on the other. In other words, the verdict on the first issue cannot be appealed to the Superior Court until the second phase has also been adjudicated. The court pointed out, however, a pivotal distinction between bifurcation and severance: While "the two phases [of a bifurcated proceeding] are viewed as two halves of a single proceeding ...[,]" *id.* at 422, 521 A.2d at 419, " 'a severance of actions effects a splitting of them into one or more independent actions for all purposes, including trial and appellate procedure.' " *Id.* at 419, 521 A.2d at 417 (quoting *Kaiser v. Meinzer,* 272 Pa.Super. 207, 216, 414 A.2d 1080, 1085 (1979), *appeal dismissed,* 498 Pa. 136, 445 A.2d 104 (1982)). Hence, when two related causes of action have been severed, a final order disposing of only one of them is not interlocutory despite the fact that the other is outstanding.

▪ In the instant action, O–I's cross-claims were severed from the trial on damages and liability. *See* N.T., 9/30/91, at 99. *See also, cf., Stevenson,* 513 Pa. at 419, 521 A.2d at 417; *Kaiser,* 272 Pa.Super. at 216, 414 A.2d at 1085. Accordingly, we find the July 22, 1992 order to be final and appealable.

O–I next argues that, assuming the July 22, 1992 order is final and appealable, the trial court abused its discretion in denying O–I's request to have its cross-claims heard at the trial on liability. We disagree.

Pa.R.Civ.P. 213(b) provides as follows:

of the language of former Rule 341 as amended through September 12, 1982.

The court, in furtherance of convenience or to avoid prejudice, may, on its own motion on motion of any party, order a separate trial of any cause of action, claim, or counterclaim, set-off, or cross-suit, or of any separate issue, or of any number of causes of action, claims, counterclaims, set-offs, cross-suits, or issues.

*Id.*

■ After a careful review, we find that the trial court's severance of O–I's cross-claims was a laudable attempt at managing the incredible asbestos backlog in Philadelphia County. The trial court, in its discretion, found that the cross-claims brought by O–I were most likely a delay tactic which would only serve to unduly prolong appellees' action. *See Noecker v. Johns–Manville Corp.*, 355 Pa.Super. 463, 513 A.2d 1014 (1986). Hence, we do not agree that the trial court abused its discretion in severing O–I's cross-claims.

O–I also contends that the trial court's severance of O–I's cross-claims was in violation of its constitutional rights guaranteed under the Pennsylvania and United States Constitutions to trial by jury, access to courts, to appeal, and to the due process of law. This argument is spurious.

The trial court, in its discretion, severed O–I's crossclaims pursuant to Pa.R.Civ.P. 213(b). Pa.R.Civ.P. 213(b) has never been found to be unconstitutional. After a careful review of the proceedings below, we find that the trial court's severance of O–I's cross-claims was proper and not in violation of either the United States or the Pennsylvania Constitution.[10]

■ Finally, O–I contends that as the trial court did not provide a written order severing O–I's cross-claims prior to the trial court opinion, O–I was not provided with the opportunity to dispute the reasons provided by Judge Moss in her opinion. We disagree. O–I's has had sufficient opportunity to present its objections to the trial court's severance of O–I's

**10.** O–I also argues that it was prejudiced by the trial court's failure to schedule a date for its cross-claims. However, O–I has failed to demonstrate any attempt to schedule its cross-claims with Judge Moss after they were severed. Hence, we cannot see any error on the part of the trial court.

cross-claims in its brief on appeal. As we have found these reasons to be without merit, we fail to see any prejudice resulting from the trial court's failure to provide O–I with a written order.

Accordingly, Keene's appeal is stayed pending the conclusion of the bankruptcy proceedings. However, regarding Fibreboard and O–I, we vacate that part of the July 22, 1992 judgment order as entered against Fibreboard and affirm that part of the order as entered against O–I.

Stayed in part; reversed in part; vacated in part; affirmed in part.

CAVANAUGH, J., concurs.

JOHNSON, J., dissents.

CAVANAUGH, Judge, concurring.

I concur in the result reached by the majority and write separately to highlight two points. First, I note that of the three appellants, one, Owens–Illinois, does not raise a challenge to the sufficiency of the evidence to show damage. The compensability of asymptomatic pleural thickening and asbestosis is only raised on appeal by Fibreboard Corp. and Keene Corp. I find the omission of this issue by Owens–Illinois noteworthy in light of other cases in which Owens–Illinois has joined the same co-appellants in raising the issue of recoverability where pleural thickening or pulmonary asbestosis are asymptomatic. *See, e.g., Dempsey v. Pacor, Inc.,* 429 Pa.Super. 404, 632 A.2d 919 (1993).

Secondly, regarding the severance of Owens–Illinois' crossclaims against settling defendants, I observe that the procedural mechanism of severance distinguishes this case from *Deptula v. Owens–Corning Fiberglas Company,* 425 Pa.Super. 420, 625 A.2d 676 (1993). In *Deptula,* a formal severance had not been ordered and, therefore, the refusal of the trial court to hear the cross-claims had the effect of a nonsuit. In both this case and *Deptula,* Owens–Illinois will pursue in a separate trial its crossclaims against the settling defendants. Owens–

Illinois, however, is not in the same posture in this case as it is as a result of the *Deptula* decision because in *Deptula* the judgment was vacated, whereas in the instant case, the $900,-000 judgment has been allowed to stand.

JOHNSON, Judge, dissenting.

While I join the Majority in affirming the order of the trial court severing the Owens–Illinois Glass Company's cross-claims, I cannot join the analysis of the majority on its disposition of the remaining issues. Not only do I reject the retroactive application of *Giffear v. Johns–Manville Corp.*, 429 Pa.Super. 327, 632 A.2d 880 (1993), to the facts of this case, my review of this record suggests the determination of the Majority that *Giffear* is dispositive of this particular case is misplaced.

James Didio's medical expert testified that Didio suffered from both progressive pleural thickening and asbestosis. N.T. 9/19/91, at 13–20; R. 559a–566a. While *Giffear* holds that asymptomatic pleural thickening is not compensable as a matter of law, 429 Pa.Super. at 335, 632 A.2d at 884, *Giffear* also determines that "if the asymptomatic pleural thickening would lead to a clear asbestos-related injury (*asbestosis*, lung cancer or mesothelioma), the plaintiff could then bring an action at that time." *Id.* at 337–38, 632 A.2d at 886 (emphasis added). *Giffear* would allow a plaintiff with asbestosis to recover since asbestosis is "a clear asbestos-related injury." Since *Giffear* would allow recovery for asbestosis, and medical testimony established that James Didio suffered from asbestosis, N.T., 9/19/91 at 15, 53–55, I am constrained to conclude that *Giffear* is not dispositive of this case on these facts.

Fibreboard also contends that Didio's "abject failure to present evidence any of his physical pain and suffering" requires this Court to grant judgment notwithstanding the verdict or a new trial. Appellant's Brief at 21–22. The authorities cited by Fibreboard fail to support this assertion. In fact, the issue in *Griffin v. Tedesco*, 355 Pa.Super. 475, 513 A.2d 1020 (1986), the first case cited by Fibreboard, was

whether the trial court's discovery sanction, which precluded appellant from introducing any testimony at trial, was improper. *Id.* at 480, 513 A.2d at 1023. This is without merit.

Fibreboard further maintains that there was no testimony that Didio experienced pain or suffering as a result of his asbestos exposure. Yet the medical evidence indicated that, given his age, Didio had an alarming severity of disease, which had already progressed extensively, and might be expected to worsen in the future; Didio "may ultimately become a pulmonary cripple" since there is no possibility of treatment, reversal or cure. N.T., 9/19/93 at 19–20, 25–29; R. 565a–566a, 571a–575a. James Didio testified that he suffers great anxiety as a result of his diagnosis and described his initial reaction to the diagnosis of his conditions as devastation. N.T. 9/20/91 at 94; R. 205a. He worries constantly about his health and the future of his family; he has altered his activities so that he is now sedentary; he suffers from shortness of breath upon exertion under humid weather conditions; his personality has also changed in that now he is withdrawn, constantly frightened that his condition will become aggravated. N.T. 9/20/91, at 97–100; R. 208–212a. This evidence when believed and accepted by a trier of fact is proof of pain and suffering. *See Boggavarapu v. Ponist,* 518 Pa. 162, 168, 542 A.2d 516, 519 (1988). "[V]ictims indeed must be compensated for all they lose and all that they suffer from the tort of another." *Id.* at 167, 542 A.2d at 518. Our Supreme Court has determined that:

[T]here are injuries to which human experience teaches there is accompanying pain. Those injuries are obvious in the most ordinary sense: the broken bone, the stretched muscle, twist of the skeletal system, injury to a nerve, organ or their function, and all the consequences of any injury traceable by medical science and common experience as sources of pain and suffering. Pain, of varying degree, may indeed follow small injury and be greater in its consequence than the initial blow. It may aggravate existing defects of the person, exploding latent diseases or precipitate, into present pain, what otherwise might have passed or been

long delayed, absent the immediate injury. Pain may be subjective, and if believed, is compensable. If the pain, however, has no known medical source and is subjective to the person, the triers of fact must believe and accept that [the pain] ... exists.

*Id.* at 167, 542 A.2d at 518 (citations omitted).

Here the jury exercised its prerogative to believe all, some or none of the evidence. My review of this record reveals that the trial court gave a full and accurate instruction to the jury on the measure of damages. Indeed, Fibreboard raises no claim to the contrary. My review of this record also convinces me that the jury followed the instruction of the trial court on the measure of damages. I would hold that this matter should end with the verdict of the jury, once the trial court denied Fibreboard's post-trial motions.

Moreover, I continue to find it unsettling that the Majority would retroactively apply this Court's decision in *Giffear v. Johns–Manville Corp.*, *supra*, to this asbestos case. In *Murray v. Philadelphia Asbestos Corp. et al.*, 433 Pa.Super. 206, 220, 640 A.2d 446, 453, dissent by Johnson, J., I set forth my concern that this Court has not actually considered whether *Giffear* should apply retroactively or prospectively. Again, I am troubled that the Majority applies *Giffear* to Keene's motion for remittitur retroactively. This issue has not been directly raised before our Court; and our Court has not had the benefit of reasoned argument by the parties on whom the burden of these decisions would fall.

Again, I am unable to deem a request for remittitur sufficient to preserve the question of whether it is proper to award damages for even an asymptomatic condition pursuant to *Giffear*. I fail to see that a request for remittitur has the particularity or precision to adequately preserve this issue. A request for remittitur alone is not sufficient to preserve this issue. Hence, I cannot agree that our Court should allow *Giffear* to be applied retroactively, absent considered and reasoned reflection. Given the volume of these cases through-

out the Commonwealth, I find this adoption of retroactivity regrettable.

Accordingly, while I join the Majority in affirming the trial court's severance of the Owens–Illinois Glass Company's cross-claims, I dissent from the Majority on the remaining issues.